CITY OF DALLAS ET AL. V. C. W. TRAMMELL.

No. 7163.   Decided February 10, 1937.
Rehearing overruled March 17, 1937.
(101 S. W., 2d Series, 1009.)

*H. P. Kucera, A. J. Thuss* and *J. Manuel Hoppenstein,* of Dallas, for plaintiffs in error.

The rights of an officer, or employee of a municipality in a municipal pension fund are not such as will prevent the Legislature from repealing or amending the statute establishing the pension system, merely because he has contributed to the fund, because the appointment to an office in Texas is not a contract creating a vested right which can not be disturbed. Bennett v. City of Longview, 268 S. W. 787; Jones v. Shaw, 15 Texas 577; Johnson v. City of Dallas, 78 S. W. (2d) 265; City of Brenham v. Brenham Water Co., 67 Texas 542, 4 S. W. 143; City of Teague v. Sheffield, 26 S. W. (2d) 417.

*E. Crippen* and *J. C. Muse, Jr.,* both of Dallas, for defendant in error.

C. W. Trammell, having complied with all the provisions of the law, and having been granted a pension, an act of the Legislature being a prospective and not a retrospective enactment could not reduce the amount of his pension without violating the inhibitions of the Constitution of the State of Texas and the United States. Byrd v. City of Dallas, 118 Texas 28, 6 S. W. (2d) 738; Chalk v. Darden, 47 Texas 438; City of Austin v. Cahill, 99 Texas 172, 3 S. W. 249; Langever v. Miller, 124 Texas 80, 76 S. W. (2d) 1025.

*J. L. McNees* and *W. C. Graves,* of Dallas, for intervenors.

MR. JUDGE GERMAN delivered the opinion for the Court.

In this case the one dominant question is the constitutionality of what is known as H. B. 122, enacted by the 44th Legislature of the State of Texas, being Article 6243a of Vernon's Texas Civil Statutes, in so far as it attempts to reduce the amount payable to defendant in error, C. W. Trammell, as a monthly pension. Defendant in error, on September 18, 1935, retired from the police department of the City of Dallas, after twenty years of continuous service. Prior to 1933, the City of Dallas adopted the provisions for the creation of the Firemen, Policemen and Fire Alarm Operators' Pension Fund, as provided by Articles 6229 to 6243 of the Revised Statutes of 1925 and preceding acts. This fund was created by deducting from the wages of each fireman, policeman and fire alarm operator accepting the benefits of same 1 per cent of the agreed compen-

sation, by donation of rewards, and by appropriations by the city of designated percentages from the general revenues of the city. The provisions of the statutes of 1925 were amended in 1933 and Section 7 of that amendment was as follows:

"Retirement Pensions. Whenever any member of said department who shall have contributed a portion of his salary, as provided herein, shall have served twenty years or more in either of said departments, he may be entitled to be retired from said service upon application, and shall, if the Board approves, be entitled to be paid from such fund a monthly pension of one-half of the salary received by him at the time of his retirement."

This provision was in effect at the time defendant in error retired from the police service, and was applicable to him, and upon his retirement he was allowed a pension in the sum of $183.33 per month. He was paid on this basis up to the time H. B. 122 became effective on October 12, 1935. (44th Leg., 1st C. S., p. 1565.) That Act amended Section 7 of the Act of 1933, and the section with reference amounts payable as pensions is as follows:

"Retirement Pensions. Whenever any member of said departments shall have contributed a portion of his salary, as provided herein, shall have served twenty (20) years or more in either of said departments and has made application to said Board, he may be entitled to a Certificate of Retirement. The issuance of which Certificate shall be mandatory upon the Board, and when the said member reaches the age of fifty (50) years he may, upon approval of the Board after making application, be retired. No member shall ever receive any award from this Fund in a Retirement nature until he has at least served twenty (20) years in either of the departments. A member retiring under the provisions of this Act shall receive one-half of the salary received by him at the time of his retirement; provided, however, that in no instance shall the monthly pension allowance awarded him be in excess of one-half of the base pay of a private per month, plus one-half of the service money granted to the member under any provision of any city charter, which pension allowance shall be computed on the basis of the current payroll, shall be granted to the man going on the pension fund as well as the man already on the pension. Any member reaching the age of sixty-five (65) years and having served twenty (20) years in either of the departments, and who has not then retired from such department, shall be

summoned before the Board for the purpose of determining whether or not he should be retired under the provisions of this act."

After the effective date of this Act, the board of trustees of the pension fund reduced the amount to be paid retired employees from the pension fund, including defendant in error. The result of the application of this new Act to defendant in error was to reduce his monthly pension payment from $183.33 to $72.36. It appears undisputed that the pension fund of the City of Dallas had been from September 1, 1933, to October 11, 1935, inadequate to pay in full the monthly pensions due and payable to those on the pension roll. From September 1, 1933, to October 11, 1935, the effective date of the new law, payments to pensioners had been prorated, and such prorations continued until approximately April 1, 1936. It also appears that under the new law, at its effective date, 74 pensioners on the rolls received benefits over the amounts paid under the old law, and 60 pensioners, including defendant in error, received less than under the old law.

This suit, which was instituted by defendant in error Trammell against the City of Dallas and those in charge of the pension fund, had for its purpose the reinstatement of defendant in error to his status under the law of 1933, applicable at the time of his retirement, and the obtaining of a decree entitling him to payment of $183.33 per month, instead of the amount tendered to him by the board of trustees under the Act of 1935. The gist of his contention is that having accepted the benefits of the pension laws applicable at the time he entered the service with the City of Dallas, and having complied with the terms of said laws, and having retired on September 18, 1935, after complying with all of the conditions applicable to him, and having been granted a pension in the sum of $183.33 per month under the applicable provisions of the law at the date of the retirement, he acquired a vested right in the pension fund to the amount of $183.33 per month, as a part of his agreed compensation, and that he can not be constitutionally deprived of any part of said sum of $183.33 per month. That consequently all subsequent legislation, such as the Act of 1935, in so far as it may deprive him of the full amount of the monthly compensation payable to him from the pension fund, is in violation of his constitutional rights. He was awarded the relief prayed for in the district court, and the judgment of the district court was affirmed by the Court of Civil Appeals. 96 S. W. (2d) 110. The result of the decision by the Court of Civil Appeals was to hold the Act of 1935, known as H. B. 122,

in so far as it diminished the amount payable to defendant in error monthly as a pension, unconstitutional and void.

The constitutionality of the law providing for the creation of the Firemen, Policemen and Fire Alarm Operators' Pension Fund for the City of Dallas was upheld in the case of Byrd v. City of Dallas, 118 Texas 28, 6 S. W. (2d) 738, and both sides of this controversy rely upon that case. In our opinion, the language of that case which is applicable here is the following:

"There is no reason why a city may not engage its servants and employees upon any terms of payment acceptable to both parties. The plan authorized by the statute contemplates in legal effect that as compensation the officers and employees named shall receive the salaries agreed upon to be paid periodically and shall be entitled to participate in the fund provided for pensions according to the statutory plan. The law pertaining to such employment is necessarily a part of the contract of employment and is read into the contract as fully as though it had been actually incorporated therein. (Trinity etc. Co. v. Lion etc. Co., (Tex. Com. App.) 229 S. W. 483; U. S. Fidelity etc. Co. v. Henderson County, (Tex. Com. App.) 276 S. W. 203, 1119). When an officer or employee coming within the statute is employed and evidences his assent to the pension scheme, he thereupon has a binding contract with his employer for the stipulated salary and likewise to be 'entitled to participate' in the fund upon the terms prescribed. The *right to participate in such fund* is therefore not a gratuity or donation in any sense. It is as much a part of the agreed compensation as is the monthly stipend." (Emphasis ours.)

This language is plain and unambiguous. It is distinctly stated that an employee, occupying a situation such as is occupied by defendant in error, acquires by virtue of his contract with the city, and as an essential part thereof, "the right to participate in" the pension fund. No one can question this, and for the purpose of this decision it may be conceded that this right to participate in the pension fund, so long as there is such a fund, is one which can not be destroyed. This, however, is not the real question for decision. As we view the matter, the true question involved is this: Does the employee, after retirement, have a vested right to participate in the pension fund to the extent of the full amount of the monthly installments granted to him at retirement; that is, does he have a vested right in future installments which can not be affected by subsequent legislation tending to diminish the amount of such installments? Putting the matter in somewhat different

language, we may properly inquire if the right which the employee has to participate in the pension fund, acquired by virtue of his contract, imposes upon the city and the Legislature of the State (the source of the city's power and authority in a matter of this kind) the inviolable duty of maintaining a pension fund of such proportions as will guarantee the right to defendant in error and others having equal rights with him to participate to the full extent of the monthly amounts previously awarded to them at the time the right to participate accrued? In other words, is the Legislature without constitutional power to repeal the laws upon which the pension system of the City of Dallas is based, or to modify their provisions in such way as to diminish the pensions payable to those who have become qualified to receive them so long as anyone who has been granted a pension shall live?

There are two distinct lines of decisions touching the question of when a pensioner has a vested right within the purview of constitutional prohibition. In Dillon on Municipal Corporations, (5th ed.) Section 431, speaking of legislative control over pensions, it is said:

"The fund from which municipal pensions are paid is usually created by setting aside certain sources of public income, and frequently provision is made that a stated sum per month shall be retained or deducted from the compensation of each of the officers in the department who may become entitled to a pension. Although the sum so deducted from the officer's compensation is called a part of the officer's compensation in the statute, yet the officer never receives it or controls it, and he can not prevent its appropriation to the fund in question. He has no power of disposition over it such as always accompanies ownership of property. A statute providing for such a deduction in legal effect says that the officer shall receive as compensation each month the net amount payable to him, and that in addition thereto the State or municipality will create a fund by appropriating the amount retained each month for that purpose, from which, upon his resignation for bad health or bodily deformity, or dismissal after long and meritorious service, a certain sum shall be paid to him, or at his death to his widow and children where the statute so provides. Being a fund raised in that way, it is entirely at the disposal of the government until, by the happening of one of the events stated,—the resignation, retirement, or death of the officer,—the right to the specific sum becomes vested in the officer or his representative. In making a change in the disposition of a fund of that character previous to the happening of one of the events mentioned,

the State impairs no absolute right of property in the officer. The direction of the State that the fund should be one for the benefit of the officer or his representative under certain conditions is subject to change or revocation at any time at the will of the legislature. There is no contract on the part of the State that its disposition shall always continue as originally provided. Until the particular event should happen upon which the money, or a part of it, is to be paid, there is no vested right in the officer to such payment. His interest in the fund is, until then, a mere expectancy created by the law and liable to be revoked or destroyed by the same authority. *But when the particular event has happened upon which the money or a part of it is to be paid, the beneficiary of the pension under the pension system acquires, it has been held, a vested right and it is not competent for the legislature or any other authority to deprive him of that vested right.*" (Emphasis ours.)

This text was deduced largely from the opinion of the Supreme Court of the United States in the case of Pennie v. Reis, 132 U. S. 464, 10 Sup. Ct. 149, 33 L. Ed. 426, which involved the pension laws of the State of California. It has been followed in numerous California cases since Pennie vs. Reis was decided, and in cases of other jurisdictions. It has very appropriately been termed the "California rule." The language relied upon by defendant in error is the clause which we have underscored. This language, however, must be interpreted in the light of the particular facts in the case of Pennie v. Reis, and in other cases where it has frequently been followed. Under various laws of California governing the granting of pensions to policemen and other employees or to their beneficiaries, such pensions have usually, if not invariably, become payable in a lump sum, or as a fixed amount payable in monthly installments. This was true in the case of Pennie v. Reis. The necessary consequence of such laws is to make the pension a liquidated demand upon the retirement or death of the employee, and of course the right to participate in the existing fund to the extent of the particular or fixed liquidated sum is a vested one. While there are some exceptions, nevertheless it can be said that most of the authorities relied upon by defendant in error are cases wherein there was a fixed or a lump sum payable, or are cases in which a careful distinction was not made, and the principle deduced from the case of Pennie v. Reis, was in our judgment, illogically applied.

The question for decision here is a different one. Defendant in error cites certain cases by the Supreme Court of Iowa. We find in the case of Gaffney v. Young, 200 Ia. 1030, 205

N. W. 865, by the Iowa Supreme Court, that after setting out in substance the rule above announced, the court used this language:

"Upon the happening of that event, and the existence of other facts entitling him to the pension, it can not be doubted that his right, so far as relates to the obligations of the custodians of the fund to pay and his right to receive the pension then provided for, accrued and vested, and could then have been enforced [Citing authorities, including Pennie v. Reis.]

"We are not concerned with any right or power of the Legislature to affect by subsequent legislation the amount or terms of an existing pension."

Here, then, is a clear recognition of the precise question for decision in the instant case, and at least an intimation that it had not theretofore been decided by that court. We quote this language primarily to set forth the exact question for decision.

1 There is another line of decisions to the effect that as pensions granted to employees of the State or its municipalities are purely of statutory origin, the employees, in making contracts of employment under which the right to participate in the pension fund accrues, do so in contemplation of the reserved right of the Legislature to amend or to repeal the laws on which the pension systems are founded; and therefore, the right to participate in the fund, even though arising from the contract, is based upon the anticipated continuance of existing laws. Under this theory, there can be no vested interest in future installments of pensions which will prevent the Legislature from repealing the law upon which the system is founded, or modifying the law in such way as to diminish the amount of future monthly payments. This is true even though the pension fund is made up partly with deductions from salaries or wages agreed to be paid participating employees. It is well settled that the mere circumstance that a part of a pension fund is made up by deductions from the agreed compensation of employees does not in itself give the pensioner a vested right in the fund, and does not make it any less a public fund subject to the control of the Legislature. State v. Board of Trustees, 192 Mo. App. 583, 184 S. W. 933; State v. Board of Trustees, 121 Wis. 44, 98 N. W. 954; Beutel v. Foreman, 288 Ill. 106, 123 N. E. 270; Pecoy v. Chicago, 265 Ill. 78, 106 N. E. 435. In the last mentioned case it was said:

"Pensions are in the nature of bounties of the government,

which it has the right to give, withhold, distribute or recall at its discretion. * * * This rule is not changed by the circumstance that plaintiff in error claims to have contributed one per cent. of his salary to such fund. The alleged contribution was not, in fact, a payment by him. He accepted the appointment of police patrolman with the knowledge that one per cent. would be deducted each month and placed in the pension fund. The money was never paid to him, and the city simply transferred one per cent. of the salary from one fund to another, and continued to hold it as a special fund to meet the disbursements under the Police Pension law."

Again, in the case of State v. Board of Trustees, 121 Wis. 44, 98 N. W. 954, it was said:

"The contribution to the fund is made by the public out of public money. It is not at first segregated from the public funds so as to become private property and then turned over to the control of the pension board, but is set aside from one public fund and turned over to another, regardless of the mere words of the law. The effect thereof is not to scale down the salaries of the officers in form by so much as measures the contribution by each to the pension fund, but to really fix such salaries at the amount actually paid, and to require the payment by the city into the pension fund of the amounts per month, mentioned as being taken from the salaries. Such amounts are no less public money after such payment than before."

2 In our opinion the rule that the right of a pensioner to receive monthly payments from the pension fund after retirement from service, or after his right to participate in the fund has accrued, is predicated upon the anticipated continuance of existing laws, and is subordinate to the right of the Legislature to abolish the pension system, or diminish the accrued benefits of pensioners thereunder, is undoubtedly the sound rule to be adopted. We briefly note expressions in some of the leading cases.

In the case of Gibbs v. Minneapolis Fire Dep. Relief Ass'n., 125 Minn. 174, 145 N. W. 1075, 1915C Ann. Cas. 749, by the Supreme Court of Minnesota, among other things it was said:

"As against the state there is no vested right in the pension accruing in the future from month to month. It may be taken away. The whole pension system may be abrogated without a violation of the Constitution."

The court also quoted with approval from the case of Rudolph v. United States, 36 App. D. C. 379, as follows:

"It also follows that, while there is no vested right in a pension which can not be divested by the mere exercise of the legislative will, if relators have any rights, they are vested ones so long only as the statute in question remains in force and unchanged, subject to be divested at any time that Congress may desire."

In view of the fact that in several cases, as in the instant case, various decisions of the California courts, and decisions predicated upon the California cases, have been relied upon in support of the opposite theory, the following comment upon those decisions is pertinent:

"Some of the California cases seem to hold inferentially, but not directly, that when the right to a pension accrued, though a continuing one from month to month, it can not be taken away; but we take it to be deducible from the cases that the repeal of a pension statute takes away the right to a pension accruing in the future without affecting the constitution. It does not take away a pension already accrued."

In the case of People v. Retirement Board, 326 Ill. 579, 158 N. E. 220, 54 A. L. R. 940, by the Supreme Court of Illinois, it was said:

"As against the state or its political subdivisions, there is no vested right in a pension accruing in the future from month to month.

" * * *

"There is no contract on the part of the state to continue the payment of a benefit or annuity, and a change in the law affecting such benefit or annuity does not impair the obligation of a contract or deprive a person of property without due process of law within the meaning of the constitutional provisions invoked."

While the Illinois courts speak of a pension accruing under the laws of that State to policemen and other employees as in the nature of a bounty or gratuity, we are unable to see any distinction to be made in the application of the rule, even if the pension be regarded as arising from contract as an essential part of the agreed compensation of the employee. Mr. DILLON, in his Municipal Corporations, immediately following the quotation above set out, said: "But the existence of a vested right is dependent upon statutory provisions conferring the pension without qualification *and without any reserved right to terminate it.*" (Emphasis by the author.) In our opinion, the contract entered into by the employee with the city is made subject to

the reserved power of the Legislature to amend, modify or repeal the law upon which the pension system is erected, and this necessarily constitutes a qualification upon the anticipated pension and a reserved right to terminate or diminish it.

In the case of Head v. Jacobs, 150 Ky. 290, 150 S. W. 349, the Court of Appeals of Kentucky, speaking with regard to pensions for policemen, said: "A pensioner has no vested right to his pension. The Legislature which created it can recall its bounty at discretion."

The Supreme Court of Florida, in the recent case of Holton v. City of Tampa, 119 Fla. 556, 159 So. 292, 98 A. L. R. 501, had before it the constitutionality of an act which reduced the amount of a pension previously awarded to a retired fireman under a preexisting act, and held that such law was not unconstitutional. After recognizing that a retired employee has a vested right to participate in an existing pension fund, the court used the following language:

"But except in a case admitting of no other construction, a statutory retirement provision will not be construed as a contractual limitation binding on the *legislative prerogative to fix the amount* of retirement pay from time to time, so long as entire deprivation is not thereby attempted under the guise of regulation of the amount of compensation." (Emphasis by the court.)

In so far as the court intimates that the Legislature would not have the right to deprive the party entirely of his pension rights, we are not in accord, unless it be understood that the court meant that if there be an existing fund in which he has a right to participate, and the Legislature should attempt to destroy entirely *his right of participation, said action might be invalid.* We do not understand the opinion to hold that the Legislature could not entirely abolish a pension system set up by a municipality, and in that way deprive a pensioner of his pension.

3   The recent case of Dodge v. Board of Education of City of Chicago, 364 Ill. 547, 5 N. E. (2d) 84, by the Supreme Court of Illinois, is a strikingly forceful one. There, the constitutionality of the "Miller Act," by the provisions of which the annuities payable to retired teachers under previous laws was in question. In the language of the opinion, "appellants' case rests upon the proposition that they have vested property rights to the payment of future installments of the annuities on the basis fixed by the law in force at the time they retired, or being entitled to retire, made application for retirement." The court

upheld the constitutionality of the Act diminishing the installments payable to the contesting teachers. By way of introduction, the court said:

"A right, to be within the protection of the Constitution, must be a vested right. It must be something more than a mere expectancy based upon an anticipated continuance of an existing law. If before rights become vested in particular individuals the convenience of the State induces amendment or repeal, such individuals have no cause to complain."

The court then observed:

"The decisions of this court have uniformly been that pensions are not based on contract, but are mere expectancies based upon anticipated continuance of existing law, and that future installments of pensions are not vested property rights. It follows that the State may reduce future installments of pensions without violating the provisions of the State or Federal Constitution."

Because of the fact that in the present case very similar contentions are made as were made by the appellants in that case, we quote the following somewhat extended statement from the opinion:

"In Hughes v. Traeger, 264 Ill. 612, 106 N. E. 431, 433, it was held that a change in the disposition of a fund, a portion of which was contributed from public taxation and a portion from the salaries of employees, does not violate any vested right of those interested therein, since such right, until it accrues, is only in the nature of an expectancy created by law and which the law may revoke or destroy. Counsel argue that this case is authority for their claim of vested right because of the language of the opinion, 'until the happening of the event designated by the statute for its distribution he has no vested right in the fund, but only an expectancy created by the law,' and that in this case the happening of the event designated by the statute was the retirement of teachers under the provisions of the Miller Act. The doctrine, as we have seen, is thoroughly established in this State that the State may control the giving or taking away of pensions, and, in consideration of such expressions as 'happening of contingency,' this doctrine must be borne in mind. If there became due to any of these appellants any installment under the act prior to the amendment of 1935 which was not paid they would have a cause of action to recover it, for until a statute is amended the processes of the law are afforded those who are beneficiaries under it. It is not

intimated in this case that there are any such unpaid installments.

"Pennie v. Reis, 132 U. S. 464, 10 Sup. Ct. 149, 151, 33 L. Ed. 426, relied upon by appellants, arose in California. In 1878 a statute was adopted in that State providing that upon death of a police officer after June 1, 1878, there should be paid to his legal representatives, out of a pension fund established by the act, the sum of $1,000. The act required contributions to the fund, and provided that in case a policeman resigned he should be repaid the amounts he had contributed. On March 4, 1889, a new pension law was enacted, providing for the merger of certain pension funds and repealing the statute under the terms of which $1,000 was to be paid to a deceased policeman's estate. This amendment occurred just nine days before the death of the policeman whose representatives were seeking the award. It was contended there, as here, that the act of 1889 violated constitutional provisions against the impairment of the obligation of contract and destroyed vested rights. It was held that this was not so. The court there said that 'until the particular event should happen upon which the money, or a part of it, was to be paid, there was no vested right in the officer to such payment. His interest in the fund was until then a mere expectancy, created by law, and liable to be revoked or destroyed by the same authority.'

"The difference in nature between a lump-sum pension or award and a continued pension is obvious and is sufficient to mark the difference in the rule with reference to interest therein as found in the decisions of the courts. Under a statute such as the one in Pennie v. Reis, supra, where, on the happening of a certain event, a certain sum of money became due, the interest of the beneficiary when such event takes place is analogous to the interest of a pensioner whose *installment* of pension has become due under the terms of a pension act. Pennie v. Reis, supra, does not in any way militate against the rule generally adopted, that pension acts do not create in their beneficiaries a vested interest in future installments of the pensions created thereby.

"Counsel for appellants seeks to draw a distinction between the payment of a pension and the payment of an annuity as affecting the question of a vested right therein. The Miller Act uses the term 'annuity.' Counsel say that even though this court has held that pensioners have no vested right in future installments of pensions, yet there is a sufficient difference between a pension and an annuity to justify their position that appellants have a vested right in such annuity. They say that an-

nuities are in the nature of compensation for services thereto-fore rendered for which compensation has been withheld. We are unable to see the distinction. The plan of payment is the same, the purposes are evidently the same, and the use of the term 'annuity' instead of 'pension'—which is but an annuity—does not seem to us to result in the distinction for which counsel for appellants contend. Moreover, it may be observed that counsel's contention that these payments are annuities of compensation withheld for services rendered, if of force, would endanger the entire act, since section 19 of article 4 of the Constitution prohibits the granting or authorizing of extra compensation, fee, or allowance to any public officer or contractor after service has been rendered or contract made."

We are not unmindful of the fact that recent decisions by some courts are apparently to the contrary, but we are convinced that the rule herein announced rests upon a sounder basis. In addition there is a practical reason which strongly supports the conclusion we have reached. It appears that at the time the Act of 1935 became effective there were 134 pensioners on the rolls in the City of Dallas. For two years the pension fund had been inadequate for payment of all pensions in full, and it had become necessary for the board of trustees to apportion the benefits. In spite of the large increases to the fund provided for in the 1935 Act, the fund was inadequate and apportionment was required until about April, 1936. It seems to be still uncertain as to whether or not the fund will be sufficient to pay all pensions in full in the future. It will be noted that the pension fund is derived partly from deductions made from the agreed compensation to be allowed the employees who voluntarily accept the plan. It seems to be obvious that if those who are already on the rolls have a vested right to receive the full amount of installments which they were entitled to receive at the time of retirement, or at the time they went on the rolls, then those who might otherwise be inclined to avail themselves of the pension plan would hesitate doing so, because in all probability they would receive nothing from the fund after the claims of those having a preference right were paid. If this should be true, it is at once apparent that the fund would soon become wholly inadequate to meet the needs even of those who were on the rolls, because one of the sources from which the fund is derived would in all probability furnish no income.

So it seems to us that the continued existence of the fund absolutely necessitates the maintaining of an equitable balance between those already upon the rolls and those coming upon

the rolls in the future. If we regard the amounts deducted from agreed compensation as contributions by the employees, then in case where the pension fund is already depleted it is apparent that those who are on the retired rolls will contribute nothing from which future pensioners will receive a benefit, but they themselves will receive a large per cent. of their future installments from contributions made by employees who are still contributing to the fund. We call attention to the fact that in the case of Board of Trustees of Policemen's Pension Fund v. Schupp, 223 Ky. 269, 3 S. W. (2d) 606, by the Court of Appeals of Kentucky, policemen who had already been drawing pensions prior to the enactment of the new law were given the privilege of enjoying an increase provided by the new law along with those coming upon the rolls after the enactment of the new law. From an equitable standpoint, it appears equally as just to allow those placed on the rolls under the new law to share on a fair basis with those already on the rolls as it is to allow those placed on the pension rolls under the prior law to receive the increased benefits of the new law.

4 It is significant to note that the Act of 1935 provides that "every contributor to said fund shall be required to pay into the fund on the base pay of a private and no more"; and the pension to a retired employee shall be in no instance "in excess of one-half of the base pay of a private per month, plus one-half of the service money granted to the member under any provision of any city charter." It is further provided that the "pension allowance set out above based on the current pay roll shall be granted to the man going on the pension as well as the man already on the pension." We think this was necessary in order to maintain the just and equitable balance between all those on the pension rolls and those to come on same, and this answers defendant in error's contention that the Act of 1935 applied only to those who might be placed on the rolls in the future.

We find that the Supreme Court of California itself in its most recent utterance has in principle completely answered defendant in error's contention. We refer to the case of Casserly v. City of Oakland, 56 Pac. (2d) 237, decided April 3, 1936. The pension law of the City of Oakland fixes the pension at a certain per cent. of the salary paid to a member of the rank occupied by the pensioner when he retires. Casserly was retired in 1933 and was allowed a pension based upon the salary of one in his rank at that time. Later the legislative authority of the city reduced the pay of policemen in the rank occupied by Casserly when he retired. The result was to reduce the

pension payable to Casserly. He sought to recover on the basis of the original pension. The court stated the contentions of the parties in this language:

"The appellants contend that, upon the happening of the contingency which entitled them to a pension, the right to a pension award vested in them, which right may not subsequently be disturbed by legislative action or municipal ordinance; that where the services are rendered under a pension statute, its provisions become a part of the contract and may not be abrogated by subsequent enactment, nor the pension reduced below the amount of the original award, but that an employee may accept an upward fluctuation. In other words, the contention is that the rights of petitioners became vested and fixed when the contingency happened which entitled him or her to the award. The respondents concede that petitioners have a vested right to a pension, as determined by the case of O'Dea v. Cook, 176 Cal. 659, 169 Pac. 366, but they insist that the pensioners have *not a right to a specific sum of money as a pension.* They contend that the salary attached to the rank at the time the payments fall due, and not the salary at the time the pension was awarded, measures its amount.

"We are constrained to agree with respondents. Reason and authority both compel this conclusion." (Emphasis ours.)

After review of certain authorities the court concludes as follows:

"But aside from the adjudicated cases, it appears that the language is admirably suited to accomplish justice for retired officers, as well as for the city. The cost of living and the value of money fluctuate, as indicated by the three raises in salaries of officers since Casserly and Sherry were originally appointed, and by the present reduction, brought about by the emergency which has been found to exist. A pension measured by the pay of officers of similar rank inures to the benefit of pensioners, when the value of money is low and the pay increased, but no injustice is done to the city and its taxpayers if, by the increase in the value of money and an emergency, it feels compelled to reduce the cost of government.

"*Authorities involving a fixed sum of money are not in point,* nor can it be argued that there was an abrogation of contractual rights, any more than it may be argued that the reduction in pay of the active officer is a violation of his contract. The reduction in the amount of the pension is in strict accord with the compensation agreement." (Emphasis ours.)

166

Here is a direct holding that as to future installments of a pension the pensioner has no vested right, but same may be diminished by the adoption of a different standard of measurement than that adopted at the date of retirement of the pensioner. Regardless of the method by which the reduction is accomplished, this case upholds the power of the legislative body to bring it about. This is as far as we need go in deciding the present case. The Legislature and the City of Dallas have manifestly sought to do no more than to meet the exigencies and necessities of the situation, and to readjust the basis of the monthly installments payable on pensions, to the end that the pension fund itself may be preserved, and that each and all entitled to receive benefits from same shall share upon an equitable basis. In our opinion, the power of the Legislature and of the City of Dallas to accomplish this is certain.

The judgments of the Court of Civil Appeals and of the trial court are reversed, and judgment is here rendered in favor of the plaintiffs in error.

Opinion adopted by the Supreme Court February 10, 1937.

Rehearing overruled March 17, 1937.