

# The Attorney General of Texas

August 19, 1986

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Bob Bullock
Comptroller of Public Accounts
L.B.J. Building
Austin, Texas   78774

Opinion No. JM-539

Re: Whether interest should be paid on taxes collected by the Comptroller on behalf of local jurisdictions

Dear Mr. Bullock:

You inform us that you have received numerous inquiries from city and county officials regarding whether interest should be paid on taxes collected by your office on behalf of local taxing units. You note that heretofore no interest has been paid to local taxing units on these funds between the date on which your office collects the taxes and the date on which such funds are disbursed to the local taxing units. Accordingly you ask us four questions:

> 1. Must interest earned on all taxes collected on behalf of local jurisdictions be remitted to the jurisdictions for which the taxes were collected?
>
> 2. If the answer to question (1) is "yes," should the State Treasurer calculate the interest based upon the rate earned by the State Treasury while they [sic] held the funds?
>
> 3. If interest is payable on such amounts, should interest earned in previous periods be remitted to the local jurisdictions?
>
> 4. If the answer to question (3) is "yes," how far back must interest calculations be made and interest remitted?

We do not understand you to ask whether the state is entitled to interest on taxes collected by local taxing units on behalf of the state and deposited in their accounts prior to their remittance to the state. See, e.g., Tax Code, §§152.001 et seq.

The Local Sales and Use Tax Act, V.T.C.S., article 1066c, permits a city, by a majority vote of the qualified voters of the city voting

at an election held for that purpose, to adopt a local sales and use tax. Section 5(a) of the act provides in pertinent part that ". . . the comptroller shall perform all functions incident to the administration, collection, enforcement, and operation of the tax. . . ." Section 7.A of the act provides the following:

> Any local sales and use tax collected by the Comptroller under this Act on behalf of any city shall be deposited with the State Treasurer <u>in trust</u> and shall be kept in a separate suspense account for each such city. (Emphasis added).

Section 8(a) of the act sets forth the following in pertinent part:

> Each city's share of all local sales and use tax collected under this Act by the Comptroller shall be transmitted to the Treasurer or the officer performing the functions of such office of such city by the Comptroller payable to the city periodically as promptly as feasible. Transmittals required under this Act shall be made at least twice in each state fiscal year. The funds so transmitted may be used by the city for any purpose for which the general funds of the city may be used. Before transmitting such funds, the Comptroller shall deduct two percent (2%) of the sum collected from each such city during such period as a charge by the State of Texas for its services specified in this Act, and the amounts so deducted, subject to the provisions of Section 7B of this Act, shall be deposited by the Comptroller in the State Treasury to the credit of the General Revenue Fund of the State.

Section 9 of this act provides that "[m]oney collected under this [a]ct is for the use and benefit of the cities of the state; but no city may pledge anticipated revenue from this source to secure the payment of bonds or other indebtedness." The act contains no provision specifically detailing the proper disposition of interest accruing to the accounts of the cities imposing the tax.

The comptroller also has responsibility under V.T.C.S. articles 1118x and 1118y, which authorize the creation of metropolitan rapid transit authorities and regional transportation authorities, respectively. Each act permits authorities created pursuant to the act to levy local sales and use taxes. Such taxes are to be administered and collected by the comptroller. V.T.C.S. arts. 1118x, §11B; 1118y, §16. Under both acts, the provisions of the Limited Sales, Excise and Use Tax, V.T.C.S. art. 1066c, are applicable to the

collection of the tax. V.T.C.S. arts. 1118x, §11B(c)(3); 1118y, §16(f)(2)(c). It is the interest generated by the deposit of these taxes with which you are concerned.

Article VIII, section 7, of the Texas Constitution provides the following:

> The Legislature shall not have power to borrow, or in any manner divert from its purpose, any special fund that may, cr ought to, come into the Treasury; and shall make it penal for any person or persons to borrow, withhold or in any manner to divert from its purpose any special fund, or any part thereof.

Article VIII, section 7, has been construed to require that interest on constitutionally dedicated funds may be spent only for the purposes for which the fund was created; a diversion of such interest to other purposes would violate the constitution. Lawson v. Baker, 220 S.W. 260, 272 (Tex. Civ. App. - Austin 1920, writ ref'd). Consequently, interest earned on a constitutional fund must be credited to that fund, unless the constitution itself otherwise directs. Attorney General Opinions JM-323, JM-321 (1985); M-468 (1969). The interest on state funds dedicated by statute, however, may be legally severed and placed in the general fund. See Gulf Insurance Co. v. James, 185 S.W.2d 966 (Tex. 1945) (article VIII, section 7, of the Texas Constitution applies only to special funds created by the constitution, not by statute); Attorney General Opinions JM-323, JM-321 (1985); MW-338 (1981); see also Brazos River Conservation & Reclamation District v. McCraw, 91 S.W.2d 665 (Tex. 1936) (article VIII, section 7, does not apply to general revenue funds). Article 2543d (since repealed and re-codified as section 3.042(a) of V.T.C.S., article 4393-1) effects such a severance of interest on statutory funds as a general rule.

Section 3.042(a) of article 4393-1, V.T.C.S., the article that sets forth the powers and duties of the state treasurer, provides the following:

> Interest received from time deposits of money in funds and accounts in the charge of the treasurer shall be allocated as follows: to each constitutional fund there shall be credited the pro rata portion of the interest received due the fund; the remainder of the interest received, with the exception of that portion required by other statutes to be credited on a pro rata basis to protested tax payments, shall be credited to the General Revenue Fund. The interest received shall

> be allocated on a monthly basis.   (Emphasis added).

The funds about which you inquire are not constitutionally dedicated funds; rather, they are statutory funds.   Consequently, pursuant to section 3.042(a), the interest on such funds would normally be credited to the General Revenue Fund.   However, the rule with regard to the disposition of interest earned by the deposit of trust funds is different.

This office previously has determined that the provisions of what is now section 3.042(a), V.T.C.S., art. 4393-1, do not apply to interest earned on trust funds that are not the property of the state and that the state treasurer holds as trustee out of the state treasury.   Opinions issued by this office consistently have maintained that interest on such trust funds becomes part of the principal and, consequently, part of the fund that generated the interest.   See Attorney General Opinions JM-306, JM-300 (1985); MW-82 (1979); H-1040 (1977); M-468 (1969).   Cf. Attorney General Opinions MW-338 (1981); H-1187 (1978).   The issue, then, is whether the funds about which you inquire are trust funds, as opposed to statutory funds.   We conclude that they are trust funds.

The opinions cited above indicate that in order to be characterized as trust funds, the funds in question should reflect, among other things, (1) that they are administered by a trustee or trustees, (2) that the funds neither are granted to the state in its sovereign capacity nor collected for the general operation of state government, and (3) that they are to be spent and invested for specific, limited purposes and for the benefit of a specific group of individuals.   Being in the nature of a trust, such funds are entitled to retain the proceeds from their investment.   Attorney General Opinions MW-481 (1982); M-468 (1969).   It is clear from a reading of V.T.C.S., articles 1066c, 1118x, and 1118y that the funds about which you inquire are trust funds and are entitled to be credited with the accrued interest earned by their deposit.   Under each statute, the comptroller acts as trustee on behalf of the various taxing units imposing the taxes.   The taxes are not granted to the state nor collected for the general operation of the state.   Each statute specifies the purposes for which such taxes may be spent, with each taxing unit receiving the amount of taxes that each imposes.

Your remaining questions concern the proper method of crediting the various funds for interest earned in previous years.   We decline to give advice as to the specific accounting methods or time intervals to be used in calculating past interest.   The answers to these questions depends upon information not provided by your request -- e.g., the terms, duration, and types of deposits, applicable rates of interest, etc.   We can state as a general matter, however, that the

funds have exhibited the aforementioned trust fund characteristics since their creation. Consequently, the funds are entitled to credit for depository interest from the various dates of their inception. Before the funds may be credited with this interest, however, certain limitations on the use of treasury funds must be considered.

You first asked whether interest earned by the state on taxes collected on behalf of local taxing units must be "remitted" to the taxing units for which the taxes were collected. The word "remit" means "to transmit or send, especially to a distance, as money in payment of a demand, account, draft, etc." Nicoletti v. Bank of Los Banos, 214 P. 51, 52 (Cal. 1923), 27 A.L.R. 1479 (1923); Katcher v. American Express Co., 109 A. 741, 742 (1920); First National Bank v. People's Bank, 140 S.E. 705 (N.C. 1927); Hollowell v. Life Insurance Company of Virginia, 35 S.E. 616, 617 (N.C. 1900). We understand your first question, then, to comprise two parts: first, whether local jurisdictions are entitled to interest earned by the state on taxes collected on behalf of local jurisdictions; and, second, if the answer is "yes," whether the state treasurer must then disburse or transmit such funds to the respective taxing units. We answer the first part of the first question in the affirmative; the second part, in the negative.

Article VIII, section 6, of the Texas Constitution prohibits withdrawal of funds from the state treasury in the absence of legislative appropriation. The Texas Supreme Court has held that funds erroneously deposited in the treasury are nevertheless subject to this constitutional limitation and may not be removed from the treasury without legislative action. Manion v. Lockhart, 114 S.W.2d 216, 219 (Tex. 1938). Accordingly, the legislature must make a specific appropriation before any interest erroneously deposited in the general revenue fund may be remitted to the cities or authorities.

We note that the discretion that the legislature may exercise in this area is broad. For example, rather than remit such interest to the taxing unit, the legislature, if it so chose, could require by statute that all such interest be retained in the General Revenue fund, transfered to another fund, or directed to be expended for some other purpose. In Gulf Insurance Co. v. James, 185 S.W.2d 966 (Tex. 1945), the Texas Supreme Court upheld the constitutionality of a statute which served to transfer from statutory "special funds" to the General Revenue Fund portions deemed surplus created from taxes paid into the Motor Vehicle Division Fund and the Fire Insurance Division Fund. The Court declared:

> We agree with the holding of the Court of Civil Appeals that the Legislature has the right to transfer the balance on hand in these special funds to the General Revenue Fund. In so doing

> the Legislature does not violate the provisions of Article VIII, section 7, of the Texas Constitution. . . . The state could have required the funds collected for the purposes indicated to be paid directly to the General Revenue Fund in the first instance. . . . If it had done so, then certainly the excess, if any, would have been available for use for general purposes. The propriety and fairness of an enactment authorizing the use of the unexpended balances in these funds for general purposes present legislative rather than judicial considerations. Consequently, the state now has the right, if the Legislature deems it wise to pass suitable laws authorizing it, to use the balances of these special funds for general purposes. (Emphasis added).

185 S.W.2d 966, 971.

Indeed, even in the case of a statutory trust fund, the Texas Supreme Court has ruled that, so long as no vested right is impaired, an amendment that serves to alter or reduce a benefit heretofore granted by statute is permissible. In the leading case of City of Dallas v. Trammell, 101 S.W.2d 1009 (Tex. 1937), the Texas Supreme Court specifically upheld the constitutionality of a statute, the effect of which was to reduce the pension benefits of a pensioner. The court stated (and restated and restated again) the issue thus:

> As we view the matter, the true question involved is this: Does the employee, after retirement, have a vested right to participate in the pension fund to the extent of the full amount of retirement; that is; does he have a vested right in future installments which cannot be affected by subsequent legislation tending to diminish the amount of such installments? Putting the matter in somewhat different language, we may properly inquire if the right which the employee has to participate in the pension fund, acquired by virtue of his contract, imposes upon the city and the Legislature of the state (the source of the city's power and authority in a matter of this kind) the inviolable duty of maintaining a pension fund of such proportions as will guarantee the right to defendant in error and others having equal rights with him to participate to the full extent of the monthly amounts previously awarded to them at the time the right to participate accrued? In other words, is the Legislature

without constitutional power to repeal the laws upon which the pension system of the City of Dallas is based, or to modify their provisions in such way as to diminish the pensions payable to those who have become qualified to receive them so long as any one who has been granted a pension shall live?

101 S.W.2d 1009, 1011.

The court concluded that

the right of a pensioner to receive monthly payments from the pension fund after retirement from service, or after his right to participate in the fund has accrued, is predicated upon the anticipated continuance of existing laws, and is subordinate to the right of the Legislature to abolish the pension system, or diminish the accrued benefits of pensioners thereunder, is undoubtedly the sound rule to be adopted.

The Court then declared that a right, to be within the protection of the constitution, must be a vested right or something more than a mere expectancy based upon an anticipated continuance of an existing law; in this instance, the pensioners' rights were mere "expectancies." 101 S.W.2d 1009, 1014-16.  See also Woods v. Reilly, 218 S.W.2d 437 (Tex. 1949); Board of Managers of the Harris County Hospital District v. Pension Board of the Pension System for the City of Houston, 449 S.W.2d 33 (Tex. 1970); Devon v. City of San Antonio, 443 S.W.2d 590 (Tex. Civ. App. - Waco 1969, writ ref'd); Attorney General Letter Advisory No. 5 (1973).

## S U M M A R Y

Interest earned on all taxes collected on behalf of local taxing units must be credited to those taxing units. Any interest previously deposited in the general revenue fund of the state treasury must receive specific legislative appropriation before such interest can be remitted to the various taxing units.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General