

# THE ATTORNEY GENERAL
## OF TEXAS

August 25, 1988

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Jim Hightower       Opinion No. JM-946
Commissioner of Agriculture
P. O. Box 12847               Re:   Authority of the legisla-
Austin, Texas   78711         ture to transfer funds from the
                              Produce  Recovery  Fund    Board
                              .into the  General Revenue   Fund
                              (RQ-1377)

Dear Mr. Hightower:

An act of the 69th Legislature provided for the trans-
fer of $337,348 from the Produce Recovery Fund (hereinafter
"the fund") to the General Revenue Fund at the end of the
1986-1987 fiscal year. Acts 1986, 69th Leg., 3d C.S., ch.
16 (hereinafter "S.B. 6"). You ask whether the legislature
had authority to make such transfer.

The Produce Recovery Fund is a "special trust fund"
established by Acts 1977, 65th Legislature, chapter 386 (now
chapter 103 of the Agriculture Code) for the payment of
claims against commission merchants and retailers licensed
by the Department of Agriculture to "handle" vegetables and
citrus fruit under chapters 101 and 102 of the code. The
fund provisions replaced a prior requirement that licensees
be bonded. The fund is maintained "with the state
treasurer" and "administered by the department, without
appropriation." License renewal fees and late license
renewal fees under sections 101.008 and 102.008, fees levied
against licensees specifically for the fund under section
103.001, and fifty percent of penalties assessed under
sections 101.020, 102.021 and 103.013, go into the fund.
Interest earned on such money stays in the fund. Section
103.002(e). Section 103.009 provides that if the department
pays from the fund a claim against a licensee, the licensee
shall reimburse the fund on a schedule to be determined by
rule of the department. Section 103.002(d) provides that no

more than ten percent of the fund may be expended in any year for administration of the claims process.[1]

According to information given in your request, the $337,348 dollars transferred from the fund by S.B. 6 was part of an approximate $525,000 surplus remaining in the fund at the end of the 1986-1987 fiscal year. Section 103.008 provides in subsection (e):

> Payments from the fund during a fiscal year may not exceed the amount of money deposited into the fund during that fiscal year, except that surplus funds remaining at the end of each fiscal year are available for the payment of claims during any succeeding year.

Section 1 of Senate Bill 6, however, provided in part that "this Act supersedes any law restricting the expenditure of [the transferred funds] to a particular purpose."

The Produce Recovery Fund is not a "constitutional fund," and is thus not subject to the provision of Texas Constitution article VIII, section 7 that "[t]he legislature shall not have power to borrow, or in any manner divert from its purpose, any special fund that may, or ought to, come into the Treasury." Gulf Ins. Co. v. James, 185 S.W.2d 966 (Tex. 1945); Brazos River Conservation and Reclamation District v. McCraw, 91 S.W.2d 665 (Tex. 1936).

Your request letter and the letter we have received from the Comptroller's office in connection with your request both suggest that resolution of the question whether the Produce Recovery Fund is in fact a "trust fund" should be dispositive of your question as to the propriety of the Legislature's diversion of the $337,348 from the fund to the General Revenue Fund.

However, as Attorney General Opinion JM-539 (1986) stated:

> [E]ven in the case of a statutory trust fund, the Texas Supreme Court has ruled that, so

---

1. You do not ask, and we do not address, any question as to the constitutionality of the Produce Recovery Fund.

> long as no vested right is impaired, an
> amendment that serves to alter or reduce a
> benefit heretofore granted by statute is
> permissible.  (Emphasis added.)

See, City of Dallas v. Trammel, 101 S.W.2d 1009 (Tex. 1937).
See also Woods v. Reilly, 218 S.W.2d 437 (Tex. 1949); Board
of Managers of the Harris County Hospital District v.
Pension Board of the Pension System for the City of Houston,
449 S.W.2d 33 (Tex. 1970); Devon v. City of San Antonio, 443
S.W.2d 598 (Tex. Civ. App. - Waco 1969, writ ref'd); and
Attorney General Letter Advisory No. 5 (1973).

Clearly, no vested rights will have been impaired by
the S.B. 6 diversion unless and until the fund is actually
depleted, and then only to the extent that the fund's
depletion and consequent insufficiency for meeting claims is
attributable to the diversion of fund moneys by S.B. 6.[2]
Your request letter indicates, however, that the fund is
still viable, having a balance of approximately $141,600 as
of March 8, 1988, the date of your request.

Neither your request nor the comptroller's letter
discuss whether any vested rights have been or will be
impaired by the S.B. 6 diversion.

Given the highly speculative nature of any argument
that actual claimants' rights might eventually be impaired
by virtue of the S.B. 6 transfer, we decline to hypothesize
circumstances under which such impairments might occur or to
rule whether the S.B. 6 transfer was unlawful as a result of
such at present only potential impairments of vested rights.

You also ask:

> If the legislature does have the authority
> to make such a transfer, and the Fund is
> depleted, what is the Board's responsibility
> as to the awarding of payment on valid
> claims?

---

2. Even apart from the operation of S.B. 6, there is
no guarantee under the statutory scheme of chapter 103 that
the fund will not be depleted. See the discussion below of
your second question.

The board you refer to  is the Produce Recovery  Board, which has  the  duty  of advising  the  department  on  "all matters relating to the fund" and of conducting hearings  on disputed claims.  Sections 103.003 et seq.

We  have  difficulty discerning  any legal  issues presented by your second  question.  Particularly under  the circumstances assumed  by your  question,  that the  S.B.  6 transfer was lawful -- i.e. that no vested rights have  been or will be  impaired -- we do not  believe that the  board's legal "responsibilities" are altered by virtue of the S.B. 6 transfer.                          .

Even apart from the  operation of S.B.  6, there is  no guarantee under the statutory scheme of chapter 103 that the fund will not be  depleted.  Your request letter  indicates, for example, that for  the fiscal year  1987-1988 up to  the date of your letter (March 1, 1988) $47,422.75 had come into the fund while $99,396.05 had been paid out.  It is  obvious that such a revenue shortfall vis a vis expenditures is  not the result of the diversion of funds under S.B. 6, but is  a result, rather, of the statutory scheme of chapter 103 which makes no provision  to assure that  the fund has  sufficient revenues to meet claims and administrative expenses.

The Department of Agriculture  acting on the advice  of the board appears to have broad rule making authority  under section 103.004 for confronting such cash flow  difficulties by reducing the  amounts paid  out in  claims under  section 103.008.  The latter section generally only sets ceilings on such payouts on claims.  Amounts or percentages of claims to be paid out  could, we think,  be reduced by  administrative rule.

                                     .

Also, the  department may  seek,  via its  rule  making authority under section 103.009 and perhaps by more diligent efforts generally,  to  increase  the  amounts  obtained  in reimbursements under that section.

Whether appropriations should be made to replenish  the fund if depleted is of course a matter within the purview of the legislature.

### S U M M A R Y

The  transfer  of  $337,348  from  the Produce Recovery Fund to the General  Revenue Fund by  operation  of  Senate  Bill  6,  3rd Called Session, 69th Legislature, was  lawful so long  as  it  did not  impair  any  vested

rights. The transfer might result in impairment of vested rights of certain claimants, if the transfer results in depletion of the Produce Recovery Fund such that their claims cannot be paid. That any vested rights will be impaired is, however, only a hypothetical possibility since the fund is at present still viable.

S.B. 6 did not alter the legal responsibility of the Produce Recovery Board in administering the fund.

Whether appropriations should be made to replenish the fund if depleted, is of course a matter within the purview of the legislature.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General