

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

October 20, 1993

Honorable John D. Whitlow
Criminal District Attorney
Calhoun County
P.O. Box 1001
Port Lavaca, Texas 77979

Opinion No. DM-265

Re: Whether the annual distribution of extra interest by the Texas County and District Retirement System to annuitants violates article III, section 52 of the Texas Constitution (RQ-569)

Dear Mr. Whitlow:

You ask whether the annual distribution of extra interest by the Texas County and District Retirement System to annuitants violates article III, section 52 of the Texas Constitution. This provision prohibits the legislature from authorizing a political subdivision "to lend its credit or to grant public money or thing of value in aid of" any private individual or entity. In particular, you are concerned that this practice may run afoul of article III, section 52, because it prohibits a city or county, in your words, "from giving away [] public monies for previously rendered services." You state that "Article III, Section 52, is violated by the distribution of the extra checks when such additional benefits are above what they received under a prior valid existing contract for no additional consideration." We disagree with your conclusion because we do not believe that the distribution of the extra interest constitutes unbargained-for, retroactive compensation.

Article XVI, section 67 of the Texas Constitution authorizes the legislature to enact "general laws establishing systems and programs of retirement and related disability and death benefits for public employees and officers." Tex. Const. art. XVI, § 67(a)(1). With respect to local retirement systems, article XVI, section 67 requires the legislature to provide by law for "a statewide system of benefits for the officers and employees of counties or other political subdivisions of the state in which counties or other political subdivisions may voluntarily participate." *Id.* § 67(c)(1)(B). It further provides that "[b]enefits under these systems must be reasonably related to participant tenure and contributions." *Id.* § 67(c)(2).[1]

---

[1] Article XVI, section 67 of the Texas Constitution also provides that laws establishing retirement systems in effect at the time of its adoption remain in effect. Tex. Const. art. XVI, § 67(a)(4). That provision was adopted in 1975. *See* S.J.R. 3, Acts 1975, 64th Leg., at LXXXII. Prior to 1975, the system was authorized by article XVI, section 62, which was repealed with the ratification of article XVI, section 67. Legislation establishing the system was enacted in 1967. Acts 1967, 60th Leg., ch. 127, at 240. Originally enacted as article 6228g, V.T.C.S., that statute is now recodified in title 8 of the Government Code.

The Texas County and District Retirement System (the "retirement system") is governed by title 8, subtitle F of the Government Code, and the management of the retirement system's assets is specifically governed by subchapter B of chapter 845 of that subtitle. *See* Gov't Code § 845.103 *et seq.*   Section 845.309 of the Government Code requires the retirement system to deposit all income from investments into an interest fund, and to transfer money from the interest fund on December 31st of each year in accordance with section 845.315.

Generally, section 845.315 provides for the transfer of the monies representing "current interest" and monies in excess of that amount to various retirement system funds and accounts. (The "current interest rate" is computed pursuant to section 845.314. It may not exceed seven percent. *Id.* § 845.314.) Subsection (a) of section 845.315 requires the retirement system's board of trustees to transfer monies constituting interest at the "current interest rate" from the interest fund to several other specified funds. *Id.* § 845.315(a). Subsection (b) requires the board of trustees to transfer any remaining funds to the "general reserves account" of the endowment fund as it determines necessary (i) to provide adequate reserves against insufficient future earnings and special and contingency requirements, and (ii) to provide for the administrative expenses for the retirement system for the following year. *Id.* § 845.315(b). Finally, subsection (c) provides that "[a]fter the requirements of the general reserves account of the endowment fund have been satisfied, the board of trustees shall transfer any amount remaining in the interest fund to the distributive benefits account of the endowment fund." *Id.* § 845.315(c); *see also id.* § 845.310(b).

Payments from the "distributive benefits account" are governed by section 845.310, subsection (e) of which provides in pertinent part:

> If the board of trustees determines that the amount credited to the distributive benefit account on December 31 of any year is sufficient to do so, the board by resolution may:
>
> . . . .
>
> (2) authorize the distribution and payment of all or part of the money credited to the account to persons who were annuitants on that day in the ratio of the rate of the monthly benefit of each annuitant to the total of all annuity payments made by the system for the final month of the year.

It also authorizes the board of trustees to distribute funds from the distributive benefit account to the "subdivision accumulation fund," *id.* § 845.310(e)(1), and to each member's individual account in the "saving fund" and each participating subdivision's account in the "subdivision accumulation fund" as supplemental interest, *id.* § 845.310(e)(3). In enacting this provision, the legislature has clearly authorized the retirement system to distribute extra interest to annuitants if the distributive benefit account contains sufficient funds.

The original statute establishing the retirement system contained an almost identical provision. *See* Acts 1967, 60th Leg., ch. 127, § V, subsec. 7(b), at 251.

The retirement system is funded by contributions from both members and their political subdivision-employers. Each member makes deposits from his or her compensation on a monthly basis at a rate set by the political subdivision, and the political subdivision matches that deposit. *See* Gov't Code §§ 844.702, 844.703. You do not appear to contend that political subdivisions' contributions to the retirement system on behalf of employees constitute an unconstitutional grant of public monies. As the retirement system notes in its brief, it is well-established that pensions, and by analogy contributions to retirement funds, constitute compensation for services rendered and do not run afoul of article III, section 52 of the Texas Constitution. *See Byrd v. City of Dallas*, 6 S.W.2d 738, 741 (Tex. 1928) ("The right to participate in [the pension] fund is therefore not a gratuity or donation in any sense. It is as much a part of the agreed compensation as is the monthly stipend."); *City of Dallas v. Trammel*, 96 S.W.2d 110, 111 (Tex. Civ. App.--Dallas 1936), *rev'd on other grounds*, 101 S.W.2d 1009 (Tex. 1937) (pension paid to retired police officer was earned but unpaid compensation); *see also Devon v. City of San Antonio*, 443 S.W.2d 598 (Tex. Civ. App.--Waco 1969, writ ref'd) (police and fire fighters pension plan does not violate article III, section 53 of the Texas Constitution because deferred pension payment is a part of the compensation employee receives for services rendered).[2]

Once contributions are transferred to the retirement system, the funds are held in trust for the benefit of the members and retirees of the system, Gov't Code § 802.201, and must be managed by the system in accordance with chapter 845 of the Government Code. As discussed above, chapter 845 provides that the distributive benefit account consists of interest earned in excess of the amount necessary to pay interest on the balances of the retirement system's other funds, and to provide for reserves and for the retirement system's administrative expenses. As interest earned on the retirement system's investments, the extra interest distribution is indistinguishable from other benefits paid to annuitants, except that it is not automatic and varies in amount from year to year depending upon the retirement system's earnings. Furthermore, the distributive benefit account has been a feature of the retirement system since it was first established in 1967. Therefore, we do not believe that the distribution of extra interest constitutes unbargained-for, retroactive compensation because the statutory authority for such distributions existed at the time current annuitants became members of the retirement system. For these reasons, we conclude that annual distribution of extra interest by the retirement system to annuitants

---

[2]*Devon*, 443 S.W.2d 598, does not support your contention that the distribution of extra interest violates article III, section 52. In that case, the court determined that a police officer who left the force before he became eligible for retirement benefits could not recover his contribution to the pension fund because it was public money to which he was not entitled under his contract of employment or the pension statute. The payment at issue here is not a refund of an employee's contributions to the retirement system, but rather a distribution of excess interest earned by the retirement system's investments which is expressly authorized by chapter 845 of the Government Code.

pursuant to section 845.310(e)(2) of the Government Code does not violate article III, section 52 of the Texas Constitution.[3]

## S U M M A R Y

The annual distribution of extra interest by the Texas County and District Retirement System to annuitants pursuant to section 845.310(e)(2) of the Government Code does not violate article III, section 52 of the Texas Constitution.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General

---

[3]You do not ask us to consider whether the distribution of extra interest to annuitants violates article III, section 53 of the Texas Constitution which specifically prohibits the legislature from granting "any extra compensation, fee or allowance to a public officer . . . after service has been rendered, or a contract has been entered into . . . ." For the reasons stated above, we also believe that the distribution of extra interest to annuitants does not violate article III, section 53 of the Texas Constitution.