**AFFIRMED; Opinion Filed December 13, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00839-CV

**LARRY EDDINGTON, VINCENT J. AURENTZ, ROMAN KILGORE, AND WILLIAM J. BUTLER, Appellants**

**V.**

**DALLAS POLICE AND FIRE PENSION SYSTEM AND GEORGE TOMASOVIC, IN HIS OFFICIAL CAPACITY AS BOARD CHAIR, Appellees**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-12001**

## OPINION
Before Justices Lang, Myers, and Schenck
Opinion by Justice Lang

At issue in this case is whether certain recent amendments to the pension plan (the "pension plan amendments") of the Dallas Police and Fire Pension System (the "Pension System") violate section 66 of article XVI of the Texas Constitution ("Section 66"). *See* TEX. CONST. art. XVI, § 66. Section 66 prohibits, in certain circumstances, the reduction or impairment of "benefits" under certain retirement systems in Texas, including the Pension System. The pension plan amendments effected changes that, among other things, reduced the

future interest rate on accounts established pursuant to the "Deferred Retirement Option Plan" ("DROP")[1] offered under the Pension System.

This lawsuit was filed by several current and retired Dallas police officers ("plaintiffs")[2] against the Pension System and its board chair, George Tomasovic (collectively, "defendants" or "DPFP"), seeking declaratory relief respecting the constitutionality of the pension plan amendments. Specifically, plaintiffs contended in part (1) "[i]nterest paid on DROP accounts is a benefit within the meaning of the Texas Constitution, the reduction of which would violate plaintiffs' constitutional rights," and (2) plaintiffs "were promised this interest rate at the time they entered DROP and are entitled to continue to receive this interest rate under Article XVI, section 66." Following a bench trial, the trial court signed a final judgment in which it (1) concluded the pension plan amendments do not violate Section 66 and (2) dismissed plaintiffs' claims with prejudice.

Appellants assert four issues on appeal. In their first and second issues, appellants contend the trial court erred by concluding the pension plan amendments do not violate Section 66 because (1) DROP is among the benefits protected by Section 66 and (2) the benefits "granted" to retirees that are protected under Section 66 include "the formula for calculating retirement benefits." Additionally, in their third and fourth issues, appellants assert the trial court abused its discretion by not allowing them to offer evidence subsequent to trial to (1) counter alleged "new arguments" asserted by defendants during post-trial proceedings and (2) support their request for attorney's fees.

---

[1] As described in greater detail below, DROP allows Pension System members who have qualified for retirement, but choose to continue working, to (1) continue receiving a regular paycheck and (2) in addition, have an amount equal to the monthly pension benefit they would have received if retired credited each month to a DROP account, which earns a specified interest rate.

[2] The original petition in this case was filed by two retired Dallas police officers, Larry Eddington and Vincent J. Aurentz, and an active police officer, Roman Kilgore, who has not filed a brief in this appeal. William J. Butler, also a retired Dallas police officer, was later added as a plaintiff in an amended pleading. In this opinion, we use the term "plaintiffs" to refer to all four plaintiffs, collectively.

We decide against appellants on their first, second, and fourth issues. We need not reach appellants' third issue. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL CONTEXT

### A. The Pension Plan and DROP

The record shows the Pension System (1) provides comprehensive retirement, death, and disability benefits for approximately 9,300 Dallas police officers, firefighters, pensioners, and beneficiaries, and (2) administers the "Combined Pension Plan" to which the pension plan amendments pertain (the "Pension Plan"). Individuals automatically become members of the Pension System upon commencing training at a Dallas police or firefighter academy. Upon retirement, a member of the Pension System becomes a "pensioner," which is defined in the Pension Plan as "a former member of the pension system who is on either a service or disability retirement."

The Pension Plan is based on the statutory framework provided in article 6243a-1 of the Texas Revised Civil Statutes, which article is titled "Pension system for police and firefighters in certain cities," and contains numerous headings and provisions identical to those in article 6243a-1. *See* TEX. REV. CIV. STAT. ANN. art. 6243a-1 (West Supp. 2015). Part 6 of the Pension Plan, titled "Benefits," contains separate, numbered sections describing, among other things, (1) "retirement pension" options; (2) "disability benefits"; (3) "death benefits"; and (4) DROP. Further, Part 8 of the Pension Plan, which is substantially similar to Part 7 of article 6243a-1, provides for amendment of the Pension Plan by its members "in any manner, including but not limited to amendments to . . . benefits or eligibility requirements for those benefits, or both," if certain requirements are met.

DROP was first implemented by the Pension System in 1993 in response to a request by the City of Dallas to find an incentive to retain experienced police officers and firefighters as part

–3–

of the workforce after they become eligible to otherwise retire. At the time DROP was implemented, the Pension Plan provided in part that "[a]mounts held in a Member's DROP account shall be credited at the end of each calendar month with interest at a rate that will approximately equal one-twelfth of the annual rate assumed by the Pension System's Qualified Actuary and approved by the Board." In October 1998, the Pension Plan was amended to state that the amounts held in DROP accounts would be credited with interest at a rate that "shall not be less than eight percent nor more than ten percent."

Each of the appellants in this case elected to enter DROP. Three are currently pensioners. Specifically, (1) Eddington began working for the City of Dallas in 1967, entered DROP in 1997, and retired in 1999; (2) Aurentz began working for the City of Dallas in 1970, entered DROP in 2002, and retired in 2009; and (3) Butler began working for the City of Dallas in 1970, entered DROP in 1993, and retired in 1996.

### B. Constitutional Background: Section 66

In 2003, the Texas Constitution was amended to include Section 66, which is titled "Protected benefits under certain public retirement systems." *See* TEX. CONST. art. XVI, § 66. That section states in part it (1) "applies only to a public retirement system that is not a statewide system and that provides service and disability retirement benefits and death benefits to public officers and employees" and (2) does not apply to benefits that are "health benefits," "life insurance benefits," or "disability benefits that a retirement system determines are no longer payable under the terms of the retirement system as those terms existed on the date the retirement system began paying the disability benefits." *Id*. § 66(a), (c). Further, subsections (d) and (e) of Section 66 provide,

> (d) On or after the effective date of this section, a change in service or disability retirement benefits or death benefits of a retirement system may not reduce or otherwise impair benefits accrued by a person if the person:

–4–

> (1) could have terminated employment or has terminated employment before the effective date of the change; and
>
> (2) would have been eligible for those benefits, without accumulating additional service under the retirement system, on any date on or after the effective date of the change had the change not occurred.
>
> (e) Benefits granted to a retiree or other annuitant before the effective date of this section and in effect on that date may not be reduced or otherwise impaired.

*Id*. § 66(d), (e). Additionally, Section 66 states political subdivisions and retirement systems are (1) "jointly responsible for ensuring that benefits under this section are not reduced or otherwise impaired" and (2) exempt from the application of Section 66 if the political subdivision holds an election by May 2004 that results in a majority vote in favor of exemption. *Id*. § 66(f), (h).

In connection with the 2003 election under which Section 66 was approved by Texas voters, an "Analyses of Proposed Constitutional Amendments" was published by the Texas Legislative Council. The analysis pertaining to Section 66 in that publication (1) described that section as a "constitutional amendment providing that certain benefits under certain local public retirement systems may not be reduced or impaired" and (2) stated "the amendment applies only to service or disability retirement benefits and death benefits." Further, the "Background" portion of that analysis stated in part as follows:

> The retirement benefits that Dallas police officers had been receiving under the city's pension program were reduced during the Great Depression as the legislature sought to help the city manage its diminishing pension fund by decreasing the monthly pension that retirees were receiving. In *City of Dallas v. Trammell*, 101 S.W.2d 1009 (Tex. 1937), retired police officers sued the city, arguing that they had a right to receive a pension amount calculated under the formula that existed when they retired. The Texas Supreme Court, however, said the city could change that formula to lower the pension amount. The court reasoned that the officers had no vested constitutional right to receive a specific pension amount. Instead, their pensions were subject to the constitutional right of the legislature to reduce payments or even abolish the system altogether.
>
> As local pension funds have again become less stable under worsening economic conditions, public employee groups have lobbied state legislatures to amend their state constitutions to guarantee some level of retirement benefits. Many states have done so, amending state constitutions in a variety of ways in an attempt to limit the ability of retirement systems to reduce benefits.

Additionally, in describing "arguments for" Section 66, the analysis stated in part,

> The amendment would permit local public retirement systems to make changes in the provision of certain benefits as long as changes apply prospectively. Thus, the amendment would also give those retirement systems the flexibility the systems need to adjust retirement benefits if necessary to respond to changing economic times, while still protecting the benefits that local government employees have already earned.

### C. The Pension Plan Amendments

In October 2014, the pension plan amendments were approved by the Pension System's board and 88% of the active members who voted on those amendments. At that time, the DROP interest rate was 8%. The pension plan amendments provided for, in part, (1) a reduction of the 8% DROP interest rate by 1% each year from October 2015 to October 2017, at which time the interest rate will be 5%, and (2) effective October 1, 2018, annual evaluation and adjustment of the DROP interest rate, including the potential reduction of that rate to zero (collectively, the "DROP Interest Amendments"). Additionally, the "ballot explanation" distributed to Pension System members prior to that election stated that in the event of approval of the amendments pertaining to DROP, the board of the Pension System would implement a change to DROP's policies and procedures that would require, for the first time, "accelerated distributions" respecting DROP accounts. Specifically, rather than continuing to allow DROP participants to maintain their DROP accounts indefinitely, the change required all pensioner DROP participants to "take a distribution from DROP each year until the DROP account is paid out through full distribution spread over 10 years beginning the year the Pensioner . . . attains age 70½" (the "DROP Withdrawal Provision"). That DROP policy and procedure change became effective January 1, 2015.

### D. Plaintiffs' Challenge to the Pension Plan Amendments

This lawsuit was filed on October 12, 2014. In their last-filed petition at the time of trial, plaintiffs requested, in relevant part, (1) a declaration that the DROP Interest Amendments and

DROP Withdrawal Provision violate Section 66 and (2) costs and attorney's fees pursuant to the Texas Civil Practices and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015). Defendants filed a general denial answer.

A bench trial was held on December 22, 2014. At the start of trial, the parties signed a "Joint Stipulation of Facts" stating, *inter alia*, that the Pension Plan's pension and DROP benefits generally operate as follows: (1) "Members of the Pension Plan accrue or earn a portion of their defined benefit pension plan each year pursuant to a formula"; (2) "[t]he accrued monthly annuity benefit is calculated under a three part formula: A (length of service) x B (Average Computation Pay) x C (multiplier) = $ monthly accrued benefit"; (3) "Pension Plan Members currently become eligible to retire after attaining both a length of service and age (early at age 45 or normal at age 50), but may continue working after becoming eligible to retire"; (4) "DROP is the acronym for the record keeping account for each Member or Pensioner who has opted to defer receipt of their pension annuity"; (5) "[i]f Pension Plan Members continue working after becoming eligible to retire, the Member has the choice of (i) continuing to accrue additional pension benefits and deferring commencement of monthly pension benefits until retirement, or (ii) entering DROP, and having an amount equal to the monthly pension benefit he could have received—if he had retired—credited each month to his DROP account"; (6) "[i]f the Member elects DROP and continues working, he continues to receive his regular paycheck"; (7) "[t]he Pension Plan's DROP provisions also allow a Pensioner to have his monthly pension credited to his DROP account up to age 70½, even though he has retired"; and (8) neither the Texas Revised Civil Statutes nor the Pension Plan "provide, or have ever provided, retirees the right to vote on trustee-recommended plan amendments."

Plaintiffs' arguments asserted in the trial court included the following: (1) "[Section 66] was proposed and adopted to reverse the result of the Texas Supreme Court's decision in *City of*

–7–

*Dallas v. Trammell*"; (2) "[a]s a remedial statute, right there you begin with the premise that . . . a reading to address the general ills for which it was put forth is necessary"; (3) "DROP is not excepted from constitutional protection despite other benefits being expressly excluded"; (4) DROP is a constitutionally protected benefit"; (5) "the DROP interest rate is constitutionally protected"; (6) defendants cite no authority for their position that "monthly pension payments are the only benefits relevant to [Section 66]"; and (7) "the DROP program and its interest rate are a benefit protected under both (d) and (e) of [Section 66]." In support of their arguments, plaintiffs cited, *inter alia*, an opinion of the Texas Attorney General in which, according to plaintiffs, the attorney general "concluded that benefits protected by the constitution 'necessarily include the dollar amount of the benefits payable at retirement.'" *See* Tex. Att'y Gen. Op. No. GA–0615, 2008 WL 982266 (2008).

Defendants argued in the trial court as follows: (1) "based on the modifying terms, Section 66 limits the definition of benefits to be accorded protection to three types," i.e., "service retirement benefits," "disability retirement benefits," and "death benefits"; (2) "[b]ecause there is no allegation that the Plan Amendments at issue affect disability retirement or death benefits, this leaves only the question of whether DROP falls under the definition of 'service retirement benefits'"; (3) "DROP is not a 'service retirement benefit' under Section 66"; (4) "[b]ecause Section 66 does not define 'service retirement benefit,' the [trial court] must look to other sources"; (5) "[t]he best source is the statutory provision that enabled and governs the rules and structure of the Dallas Police and Firefighter Pension Fund: Article 6243a-1"; (6) sections 6.01 and 6.02 of that article "define traditional monthly retirement pension benefits (aka, 'service retirement benefits')"; (7) Section 66 had "two purposes": "to remedy the 'evil' that was the *Trammell* decision, under which already accrued . . . monthly pension amount [sic] could be reduced retroactively" and "to allow pension funds to still have flexibility to make changes on a

prospective basis so as to maintain fiscal integrity"; (8) "[t]he Plan Amendments at issue in this case do not touch the types of service retirement benefits that Section 66 was designed to protect"; (9) Section 66 applies only to a "service benefit," which is "the pension"; and (10) regardless, "nothing any Member or Pensioner has already earned or accrued will be reduced" under the amendments in question.

Numerous exhibits were admitted into evidence during trial, including, among other things, (1) prior and current versions of the Pension Plan; (2) excerpts from prior and current versions of the Pension System's "Member Handbook"; (3) the "election packet" distributed to Pension System members respecting the 2014 election described above; (4) excerpts from a videotaped deposition of Tomasovic; (5) form documents completed and signed by the individual plaintiffs to effect their participation in DROP; and (6) various documents distributed by the Pension System to its members in past years respecting participation in DROP and the financial status of the DROP program. Also, defendants called to testify Donald Rohan, the interim director of the Pension System. Following Rohan's testimony, defendants rested their case and counsel for plaintiffs told the trial court plaintiffs had no rebuttal evidence. Then, the trial court stated, "So all the evidence in the matter is now closed." Counsel for plaintiffs replied, "That's correct, Your Honor."

The trial court signed a judgment dated December 31, 2014, declaring the amendments in question unconstitutional, and a January 22, 2015 amended judgment. Defendants filed a timely "Motion for Reconsideration and to Modify, Correct, or Reform the Judgment" (the "motion for reconsideration"). Therein, defendants asserted in part (1) "Texas has a comprehensive statutory scheme governing pension benefits" and Section 66 must be interpreted within the context of that scheme; (2) "terms of art . . . limit the scope of [Section 66] to benefits that are not affected by the Plan Amendments"; (3) "[t]he service retirement benefits described by Section 66(e) are the

–9–

monthly pension annuities that had been applied for and granted by formal action taken by the pension fund board prior to [the effective date of Section 66]"[3]; and (4) "[c]onstruing the constitutionally protected benefit under Section 66 as the retirement pension accomplishes the Legislature's objective in overturning *Trammell*."

In their response to defendants' motion for reconsideration, plaintiffs stated in part "[d]efendants argue nothing new." Additionally, on February 6, 2015, plaintiffs filed a motion for attorney's fees and costs. Attached to that motion as exhibits were itemized invoices and affidavit testimony as to necessity and reasonableness.

On March 26, 2015, a combined hearing was held on defendants' motion for reconsideration and plaintiffs' motion for attorney's fees and costs. At that hearing, the trial court stated it would construe plaintiffs' motion for attorney's fees and costs as a motion to reopen the evidence.

On April 3, 2015, the trial court (1) granted defendants' motion for reconsideration; (2) vacated its prior judgment described above; and (3) denied plaintiffs' motion for attorney's fees and costs. The trial court's final judgment challenged in this appeal is dated April 14, 2015. In that judgment, the trial court states in part (1) the DROP Interest Amendments and DROP Withdrawal Provision do not violate Section 66; (2) all claims asserted by plaintiffs are dismissed with prejudice and plaintiffs shall take nothing by way of this lawsuit; and (3) all relief requested and not expressly granted is denied. Further, the trial court signed findings of fact and conclusions of law dated May 11, 2015.[4]

---

[3] In support of their arguments, defendants cited, *inter alia*, sections 6.01 and 6.02 of article 6243a-1 and the Pension Plan, which state in part that entitlement to a retirement pension is subject to certain conditions, including that upon a member's retirement, "the grant of a . . . retirement pension by the board must be made at a meeting of the board held during the month the . . . retirement pension is to become effective, or as soon after that as possible." *See* TEX. REV. CIV. STAT. ANN. art. 6243a-1, §§ 6.01(h), 6.02(c).

[4] The trial court's conclusions of law included the following:

On May 14, 2015, plaintiffs filed a combined motion to reopen the evidence, motion for new trial, and motion for reconsideration. Therein, plaintiffs contended in part that defendants had raised a "new theory" post-trial respecting "the technical definition of 'service retirement benefit'" and plaintiffs should be allowed to present witness testimony pertaining to that theory. Additionally, during the hearing on that motion, counsel for plaintiffs argued in part, "[I]t is the method and the formula that is the benefit. And so any change to those formulas, any changes to those methods of calculating the money that you will receive in the future, that is what the benefit is, and that is the benefit that is protected."

The trial court denied plaintiffs' combined motion to reopen the evidence, motion for new trial, and motion for reconsideration.[5] This appeal timely followed.

---

2. . . . Article 16, § 66 must be viewed within the context of the comprehensive statutory scheme governing pensions as well as the provision's legislative purpose, which was to overturn *City of Dallas v. Trammell*, 101 S.W.2d 1009 (Tex. 1937), a case that dealt exclusively with fully vested monthly pension annuities[.]

3. Article 16, § 66 applies to three categories of benefits (i) service retirement benefits; (ii) disability retirement benefits; and (iii) death benefits. Only service retirement benefits are at issue here.

4. The term "service retirement benefits" means monthly pension annuities such as those described in Section 6.01 (Group A Retirement Pension) and Section 6.02 (Group B Retirement Pension) of the Pension Plan[.]

5. The term "service retirement benefits" does not encompass all benefits related to service and/or retirement, and, more specifically, the term does not include DROP or any DROP-related benefits. *See, e.g.*, Statute and Plan, §§ 6.14(a), (c), (h), & (i), which distinguish DROP from monthly pension annuities and make clear that upon entering DROP, a member no longer accrues additional pension benefits. In this regard, the Court also notes that (i) DROP and DROP interest are not a part of the monthly pension annuities available under the Pension Plan and Statute, and (ii) DROP and DROP interest are not a part of the monthly annuity formula.

6. Article 16, § 66 does not apply here because the DROP Amendments do not reduce or otherwise impair "service retirement benefits."

7. Additionally, Article 16, § 66 does not apply here because the DROP Amendments do not reduce or otherwise impair the benefits described in Section 66(d) and 66(e) of Article 16[.]

8. Section 66(d) applies only to "benefits accrued" (i.e., benefits fully earned in the past) by an employee whose interest in those benefits has fully vested. The term "benefits accrued" does not include future, unearned interest on DROP accounts.

9. Section 66(e) applies only to "benefits granted to a retiree or other annuitant" and "in effect" as of September 13, 2003 (the effective date of the provision). As such, Section 66(e) applies only to monthly pension annuities that were "granted to a retiree or other annuitant" and "in effect" as of September 13, 2003, and does not apply to DROP or DROP-related benefits.

10. Accordingly, the benefits that Plaintiffs claim are improperly reduced or otherwise impaired are not constitutionally protected benefits[.]

11. The DROP Amendments do not violate Article 16, § 66 of the Texas Constitution, and Defendants' actions in connection with the DROP Amendments are not ultra vires[.]

12. The Court's construction of Article 16, § 66 of the Texas Constitution is consistent with the text of the constitutional provision and furthers the Legislature's purpose in protecting fully earned, monthly pension annuities while preserving pension systems' flexibility to make prospective changes to maintain the long-term financial health of the pension plans.

13. An award of attorneys' fees to Plaintiffs under Section 37.009 of the Declaratory Judgment Act is improper here because (i) Plaintiffs did not present any evidence of their attorneys' fees at trial and/or (ii) a fee award under the circumstances of this case is not "equitable and just[.]"

[5] Subsequently, plaintiffs filed a July 7, 2015 offer of proof that included affidavits of several witnesses whose testimony plaintiffs sought to present. The trial court signed a July 14, 2015 order in which it stated "the evidence contained in the Offer is not admissible."

## II. VIOLATION OF SECTION 66

### *A. Standard of Review*

The construction of a constitutional provision is a question of law subject to de novo review. *See, e.g.*, *In re M.G.N.*, 441 S.W.3d 246, 248 (Tex. 2014); *Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009). "We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence." *Fulgham v. Fischer*, 349 S.W.3d 153, 157–58 (Tex. App.—Dallas 2011, no pet.).

### *B. Applicable Law*

"In construing the Constitution, as in construing statutes, the fundamental guiding rule is to give effect to the intent of the makers and adopters of the provision in question." *Tomball Reg'l Hosp.*, 283 S.W.3d at 842 (citing *Cox v. Robison*, 150 S.W. 1149, 1151 (Tex. 1912)). "We presume the language of the Constitution was carefully selected, and we interpret words as they are generally understood." *Id.* (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex. 1995)). We rely heavily on the literal text. *Id.* (citing *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 355 (Tex. 2000)). However, we may consider such matters as the history of the legislation, the conditions and spirit of the times, the prevailing sentiments of the people, the evils intended to be remedied, and the good to be accomplished. *Id.*; *see also Aerospace Optimist Club of Fort Worth v. Tex. Alcoholic Beverage Comm'n*, 886 S.W.2d 556, 560 (Tex. App.—Austin 1994, no writ) ("The legislature's practical interpretation of a constitutional term can be a valuable aid in determining the meaning and intention of that term in cases of doubt."). We construe constitutional provisions and amendments that relate to the same subject matter together and consider those amendments and provisions in light of each other. *Doody v. Ameriquest Mortg. Co.*, 49 S.W.3d 342, 344 (Tex. 2001). The rule has long prevailed in Texas

that constitutional provisions should not be given a technical construction that would defeat their purpose. *Cramer v. Sheppard*, 167 S.W.2d 147, 154 (Tex. 1942). "We also are not unmindful of the rule that constitutional and statutory provisions will not be so construed or interpreted as to lead to absurd conclusions, great public inconvenience, or unjust discrimination, if any other construction or interpretation can reasonably be indulged in; but this rule only applies where the constitutional or statutory provision under consideration is open to more than one construction or interpretation." *Id*. at 155.

## C. Application of Law to Facts

We address appellants' first and second issues together.[6] In their arguments pertaining to those issues in their initial appellate brief, appellants contend in part (1) DROP is a "service retirement benefit"; (2) "the formula for the DROP benefits is as follows: (average pay computation) x (years of service) x (multiplier) + (interest on the monthly pension at the established interest rate)"; (3) "[t]he Texas Legislature passed, and the citizens of Texas adopted, article XVI, § 66 of the Texas Constitution to prevent service retirement benefits, including DROP benefits, from being reduced or impaired except on a prospective basis"; (4) "[t]his protection of benefits includes protection for the formula for calculating future retirement income"; and (5) the pension plan amendments "were applied to retirees to whom DROP benefits had been granted prior to the effective date of Section 66 retroactively reducing and impairing previously granted benefits."

---

[6] Specifically, those two issues state as follows:

Issue No. 1 – Article XVI, section 66 of the Texas Constitution protects service retirement benefits from being reduced or otherwise impaired but does not define the "service retirement benefits" which are protected. Does Section 66 protect the Deferred Retirement Option Plan, which is a benefit only available to retirees after acquiring the requisite years of service and age, or does Section 66 only protect monthly pension annuities?

Issue No. 2 – Article XVI, section 66 of the Texas Constitution protects benefits granted to retirees from being reduced or otherwise impaired. Do the protected "benefits" include the formula for calculating retirement benefits or only the future income from such formula?

–13–

DPFP responds, in part, (1) the term "service retirement benefits" means only "monthly pension annuities" and does not include "DROP interest payments"; (2) "[t]his definition squares with the purpose of Section 66 in overturning [*Trammell*], which authorized the City of Dallas to reduce retirees' earned monthly pension annuities"; (3) the challenged DROP Interest Amendments "only address[] prospective interest payments on annuities previously credited to DROP accounts, which are not within the scope of Section 66's protections"; and (4) the term "benefits granted" in Section 66(e) refers to a "formal 'grant' of the accrued retirement pension" pursuant to sections 6.01 and 6.02 of article 6243a-1.

Additionally, appellants assert in their reply brief in this Court (1) DPFP's argument that "service retirement benefits" include only monthly pension annuities is "misplaced" because "it relies on methods for interpreting legislative enactments" and "virtually ignores a key component for interpreting constitutional amendments: the intent of the voters who adopted the amendment"; (2) "[n]umerous legal authorities demonstrate that, under § 66 and similar constitutional provisions, the formula for computing retirement income is itself a protected benefit"; (3) "the DROP interest rate is a key component of the formula for calculating a retiree's retirement income"; (4) "[t]he formula for calculating retirement income, which includes the DROP rate, is a protected benefit under § 66"; (5) "[w]hen DPFP changed the formula for calculating retirement income by reducing the DROP rate and accelerating the time for withdrawing retirement funds from DROP accounts, DPFP impaired a constitutionally protected benefit in violation of § 66"; and (6) although appellants seek relief under subsection (e) of Section 66, "even if this case were analyzed under subsection (d), it would not alter the analysis as the DROP rate accrued to [appellants] when they entered DROP at which time they were promised the guaranteed 8% DROP rate."

–14–

Because both sides cite and discuss *Trammell* in their appellate briefs, we begin with a description of the facts of that case. *See Trammell*, 101 S.W.2d at 1009. In 1935, C.W. Trammell retired from the police department of the City of Dallas after twenty years of service. *Id.* Prior to 1933, the City adopted provisions for the creation of a pension fund as provided by articles 6229 through 6243 of the Texas Revised Statutes. *Id.* That fund was created, in part, by deducting 1% from the wages of each firefighter and police officer in the plan. *Id.* At the time of Trammell's retirement, the pension fund's governing provisions stated in part that a member who had contributed to the fund and served twenty years or more "shall, if the board approves, be entitled to be paid from such funds a monthly pension of one-half of the salary received by him at the time of his retirement." *Id.* Pursuant to that provision, Trammell was "allowed a pension in the sum of $183.33 per month." *Id.* at 1010.

Approximately one month after Trammell retired, an amendment to the Texas Revised Statutes became effective. *Id.* The amendment provided in part as follows: (1) "[a] member retiring under the provisions of this Act shall receive one-half of the salary received by him at the time of his retirement; provided, however, that in no instance shall the monthly pension allowance awarded him be in excess of one-half of the base pay of a [person holding the rank of 'private'] per month, plus one-half of the service money granted to the member under any provision of any City Charter" and (2) "[t]his pension allowance . . . shall be granted to the man going on the Pension Fund as well as the man already on the pension." *Id.* As a result of the amendment, Trammell's monthly pension was reduced to $72.36. *Id.* Trammell sued the City, seeking to have his pension reinstated to the original amount of $183.33 per month. *Id.* Specifically, he asserted that "having accepted the benefits of the pension laws applicable at the time he entered the service with the City of Dallas, and having complied with the terms of said laws, . . . and having been granted a pension in the sum of $183.33 per month under the

applicable provisions of the law at the date of the retirement, he acquired a vested right in the pension fund to the amount of $183.33 per month, as a part of his agreed compensation, and . . . cannot be constitutionally deprived of any part of said sum of $183.33 per month." *Id.* Trammell prevailed in the trial court and the court of appeals. *Id.* However, the supreme court reversed. *Id.*

The supreme court stated in part that "the true question involved is this: Does the employee, after retirement, have a vested right to participate in the pension fund to the extent of the full amount of the monthly installments granted to him at retirement; that is, does he have a vested right in future installments which cannot be affected by subsequent legislation tending to diminish the amount of such installments?" *Id.* at 1011. That court concluded as follows:

> [A]s to future installments of a pension the pensioner has no vested right, but same may be diminished by the adoption of a different standard of measurement than that adopted at the date of retirement of the pensioner. Regardless of the method by which the reduction is accomplished, this case upholds the power of the legislative body to bring it about. This is as far as we need go in deciding the present case.

*Id.* at 1017.

In the case before us, the parties do not dispute that the Texas Legislature's passage of Section 66 was intended to reverse the result of *Trammell*. Further, appellants argue "DROP did not exist when the *Trammell* opinion was handed down" and "[t]herefore, the holding in *Trammell* addressing a specific service retirement benefit (a pension) cannot be interpreted to exclude another service retirement benefit (DROP) that was created later." The parties cite no Texas case law addressing the meaning of the terms of Section 66 in question, and we have found none. However, subsequent to the filing and briefing of this appeal, the United States Court of Appeals for the Fifth Circuit addressed a Section 66 challenge to the constitutionality of a pension plan change in *Van Houten v. City of Fort Worth*, 827 F.3d 530 (5th Cir. 2016).

*Van Houten* involved a defined benefits pension plan operated by the City of Fort Worth (the "City") for the benefit of its employees. *Id*. at 532. The plaintiffs were several current employees of the City's police and fire departments ("the employees"). *Id*. At the time each of the employees vested as to the City's pension plan, the City employed a "High 3" formula to determine the amount of an employee's annual pension. *Id*. at 533. Under that formula, the three highest annual salaries received by the retiring employee were averaged to reach a base amount, which was multiplied by the employee's years of service and then subjected to a 3% multiplier. *Id*. Also, employees had two options respecting a cost-of-living adjustment ("COLA"): (1) a fixed 2% COLA or (2) an "ad hoc" COLA, which allowed for a variable, compounded rate between 0% and 4% depending on the financial strength of the pension plan. *Id*. Each of the employees chose the ad hoc COLA. *Id*.

In 2012, the City passed an ordinance intended to improve the pension plan's financial condition. *Id*. That ordinance effected two changes to the plan. The first change involved the High 3 formula. For new employees, the High 3 formula was replaced with a High 5 formula that (1) averages the five highest paid years, rather than three, and (2) uses a 2.5% multiplier instead of a 3% multiplier. *Id*. Further, in light of Section 66, the City sought to ensure that the reform would affect vested members of the pension plan only prospectively by adopting a bifurcated "High 3/High 5" formula, under which the calculation of benefits for employees who work both before and after the amendment is a combination of the two calculations. Specifically, "[t]he part accrued before the amendment stays the same" and "[i]t is only future benefits that are calculated under the new formula." *Id*. Second, the City eliminated COLAs for future employees and provided that current employees would henceforth receive a 2% COLA. *Id*. The employees challenged both reforms as unconstitutional under Section 66(d).

–17–

The trial court concluded the City's challenged pension reforms complied with Section 66 and granted summary judgment in favor of the City. *Id*. On appeal, the Fifth Circuit denied a motion by the employees to certify questions to the Texas Supreme Court respecting the construction of the terms in Section 66(d). *Id*. at 540 n.10. Then, the Fifth Circuit affirmed the trial court's judgment. *Id*. at 534. The Fifth Circuit reasoned in part (1) the "two-part structure" of Section 66(d) "prohibits the impairment of *accrued* benefits for *vested* employees"; (2) "[t]here is an understood difference between the concepts of benefit *accrual* and *vesting*"; and (3) "[t]his understanding essentially resolves the case." *Id*. (emphasis original).

As part of its analysis, the Fifth Circuit specifically rejected the employees' arguments that (1) "'benefits' means the right to the formula" and (2) "a benefit formula accrues at the moment of vesting and becomes constitutionally protected, meaning that even wholly prospective formula adjustments are foreclosed by Section 66." *Id*. at 535. Rather, that court concluded in part "[t]he term 'benefits' refers to payments and does not encompass the formula by which those payments are calculated." *Id*. Further, the Fifth Circuit declined to follow the 2008 opinion of the Texas Attorney General described above, in which the attorney general concluded, in part, that "accrued benefits" as used in Section 66 "include[s] the method for determining the compensation base for calculating retirement benefits." *Id*. at 536 (citing Tex. Att'y Gen. Op. No. GA–0615, 2008 WL 982266 (2008)). Specifically, the Fifth Circuit described that opinion as "based on holdings from other state supreme courts." *Id*. Then, the Fifth Circuit stated in part,

> In the context of public pension plans, it is particularly problematic to assume that Texans suddenly decided (with the enactment of a constitutional provision that looks nothing like the supposedly similar constitutional provisions of other states) that Texas would henceforth copy states like New York and Illinois with respect to protecting public employees' retirement plans. When it comes to public pension protection, Texas is known to be an outlier. In 1937, the Texas Supreme Court decided *City of Dallas v. Trammell* and held that pensioners' rights to accrued benefits were subject to the legislative power of the state "to amend,

modify, or repeal the law upon which the pension system is erected." 129 Tex. 150, 101 S.W.2d 1009, 1014 (1937). The ruling meant that C.W. Trammell, a retired Dallas police officer whose monthly pension was cut from $183.33 to $72.16, had no recourse. While other states enacted laws to protect public pensions from similar cuts, Texas held its course—until the enactment of Section 66. As one Texas appellate court put it, Section 66 "was proposed and adopted specifically to change the result of the *Trammell* decision, albeit 70 years later." *Davidson v. McLennan Cty. Appraisal Dist.*, No. 10-11-00061-CV, 2012 WL 3799149, at *5 (Tex. App.—Waco Aug. 30, 2012, pet. denied) (mem. op.).

As we have interpreted it, Section 66 reverses the core unfairness of the *Trammell* decision by ensuring that earned benefits cannot be reduced. By going no further, our interpretation of Section 66 stays true to Texas' long-held flexible approach permitting municipalities to revise their pension plans in light of changing economic conditions. The AG Opinion not only discards Section 66's text and replaces it with the text of other states' constitutions, it also replaces Texas' history and policy objectives with the history and policy objectives of disparate states. In doing so, the AG Opinion takes a path we do not expect the Texas Supreme Court to follow.

*Id*. at 537–38.

Prior to the oral submission of the instant case before this Court, (1) appellants filed a "Notice of Supplemental Authority" addressing *Van Houten* and (2) DPFP filed a "Notice and Response Regarding Supplemental Authority." According to appellants, *Van Houten* "does not alter the analysis, arguments, or the relief sought" because (1) "the Fifth Circuit's analysis concerning the pension changes in Fort Worth under Section 66(d) with regard to current employees who had not yet retired has no bearing on whether the Plan Amendments in the present case affecting current retirees are constitutional under Section 66(e)"; (2) "[t]he differences in the language used in sections (d) and (e) are significant and demonstrate that the intent of the legislature and the adopters of the legislative amendment was to distinguish between 'accrued benefits' under Section 66(d) and 'granted benefits' under Section 66(e)"; and (3) unlike the Fifth Circuit in *Van Houten*, "this Court must consider the constitutionality of the DPFP's changes to [appellants'] 'granted benefits'—benefits that were granted to them when they elected to enter DROP." Additionally, appellants contend "the Fifth Circuit's dismissal of [the opinion of the Texas Attorney General described above] and its refusal to adhere to well-

–19–

established rules of constitutional construction represent a critical void in the Fifth Circuit's analysis."

DPFP responds that *Van Houten* "reinforce[s]" points made by DPFP in its appellate brief because *Van Houten* (1) rejected a "fixed-formula argument"; (2) "holds that Section 66 has a dual purpose—to reverse [*Trammell*], while still preserving 'Texas' long-held flexible approach permitting municipalities to revise their pension plans in light of changing economic conditions'"; (3) "confirmed that Section 66 is to be interpreted according to its terms, which are distinct from terms found in certain other state constitutions"; and (4) in interpreting the meaning of terms in Section 66, "looked to analogous Texas statutes to confirm the interpretation of those terms." Additionally, DPFP argues (1) although appellants "try to mitigate *Van Houten*'s adverse holdings by pointing to Section 66(e)," "[s]ubsections (d) and (e) protect the same benefits; and (2) "[t]hat future DROP interest is neither a 'granted' nor 'accrued' benefit protected by Section 66 is consistent with *Van Houten* and the broader purposes of Section 66 to reverse *Trammell*, while still providing flexibility to pension systems to make prospective changes to pension benefits."

Although this Court is not bound by the Fifth Circuit's interpretation of Texas law, we find the reasoning in *Van Houten* persuasive. *See Cruz v. Van Sickle*, 452 S.W.3d 503, 518 n.20 (Tex. App.—Dallas 2014, pet. denied) (adopting "persuasive" reasoning of Fifth Circuit); *Johnson v. Johnson Cty.*, 251 S.W.3d 107, 110 n.2 (Tex. App.—Waco 2008, pet. denied) (same). We disagree with appellants' position that the Fifth Circuit did not give adequate consideration to certain non-controlling authority cited in *Van Houten*, i.e., the attorney general opinion described above and the law of other states. That authority was addressed by the Fifth Circuit and rejected because that court reasoned Section 66 "looks nothing like the supposedly similar constitutional provisions of other states." *Van Houten*, 827 F.3d at 537; *see also Brown v.*

–20–

*Meyer*, 787 S.W.2d 42, 45 (Tex. 1990) ("Although the decisions of other states construing their constitutions are persuasive authority, our holding rests upon the language and prior construction of our own constitution."). Further, we conclude the Fifth Circuit's analysis was conducted in accordance with established principles of constitutional construction under Texas law. *See Van Houten*, 827 F.3d at 534 (stating Fifth Circuit interprets the Texas Constitution "as would Texas courts," which "presume the language of the Constitution was carefully selected, interpret words as they are generally understood, and rely heavily on the literal text"); *see also Tomball Reg'l Hosp.*, 283 S.W.3d at 242.

Based on the Fifth Circuit's analysis in *Van Houten*, we conclude the term "benefits" as used in Section 66 "refers to payments and does not encompass the formula by which those payments are calculated." *See Van Houten*, 827 F.3d at 535. As stated in *Van Houten*, this interpretation of Section 66 "reverses the core unfairness of the *Trammell* decision by ensuring that earned benefits cannot be reduced" and yet, "[b]y going no further, . . . stays true to Texas' long-held flexible approach permitting municipalities to revise their pension plans in light of changing economic conditions." *Id*. at 538. The record before us supports appellants' assertion that "the DROP interest rate is a key component of the formula for calculating a retiree's retirement income." However, we disagree with appellants' position that "[t]he formula for calculating retirement income, which includes the DROP rate, is a protected benefit under §66." In accordance with *Van Houten*, even assuming without deciding that, as argued by appellants, DROP is a "service retirement benefit," we conclude the DROP interest rate is not among the "benefits" protected by Section 66.[7] *See id*. at 535.

---

[7] Because the question of "whether DROP is a 'service retirement benefit'" is immaterial to our analysis respecting appellants' first and second issues, we need not reach appellants' third issue, in which they contend the trial court erred by denying their motion to present "rebuttal evidence" as to the "technical argument" of DPFP respecting "whether DROP is a 'service retirement benefit.'" Specifically, that issue states as follows: "When a defensive theory is not briefed or fully developed until being asserted in a post-judgment motion for reconsideration, is it an abuse of discretion to disallow the plaintiff to offer rebuttal evidence to counter the new arguments?"

We recognize that *Van Houten* involved only Section 66(d), which refers to "benefits accrued," while appellants in this case base their arguments primarily on Section 66(e), which refers to "benefits granted." However, the plain language of Section 66 does not show that the term "benefits" has different meanings in those separate provisions, nor do appellants argue such.[8] *See id*. at 538 n.7 (describing reasoning in dissenting opinion as "perplexing" to extent it suggests the term "benefits" has different meanings in different portions of Section 66). Moreover, Section 66(e) pertains specifically to not just "benefits granted," but rather "[b]enefits granted to a retiree or other annuitant." The record shows (1) sections 6.01 and 6.02 of article 6243a-1 and the Pension Plan state that a monthly retirement pension is subject to several conditions, including that upon a member's retirement, the "grant" of such pension by the board of the Pension System must be made at a meeting of the board within a specified time period,[9] and (2) there is no such "granting" requirement respecting DROP benefits.[10] Additionally, as

---

[8] As described above, appellants assert in their reply brief in this Court that "even if this case were analyzed under subsection (d) [rather than subsection (e)], it would not alter the analysis as the DROP rate accrued to [appellants] when they entered DROP at which time they were promised the guaranteed 8% DROP rate."

[9] Specifically, sections 6.01 and 6.02 of article 6243a-1 pertain, respectively, to the requirements of the two retirement pension options available under the Pension Plan, the "Group A Retirement Pension" and the "Group B Retirement Pension." *See* TEX. REV. CIV. STAT. ANN. art. 6243a-1, §§ 6.01, 6.02. Section 6.01(h)(2), which contains language identical to section 6.01(h)(2) of the Pension Plan, states in part,

> (h) Entitlement to the Group A retirement pension described by this section is subject to the following conditions:
> . . . .
> (2) the <u>grant</u> of a Group A retirement pension by the board must be made at a meeting of the board held during the month the Group A retirement pension is to become effective, or as soon after that as possible[.]

*Id*. § 6.01(h)(2) (emphasis added). Section 6.02(c)(2), which contains language identical to section 6.02(h)(2) of the Pension Plan, states in part,

> (c) Entitlement to a Group B retirement pension described by . . . this section is subject to the following conditions:
> . . . .
> (2) the <u>grant</u> of the Group B retirement pension by the board must be made at a meeting of the board held during the month the Group B retirement pension is to become effective, or as soon after that as possible[.]

*Id*. § 6.02(c)(2) (emphasis added).

[10] DROP is addressed in section 6.14 of article 6243a-1. *See* TEX. REV. CIV. STAT. ANN. art. 6243a-1, § 6.14. Subsection (a) of that section, which contains language identical to that in subsection 6.14(a) of the Pension Plan, states in part that a member who remains on active service after becoming eligible to receive a retirement pension under section 6.01 or 6.02 "may . . . become a participant in the Deferred Retirement Option Plan ("DROP") in accordance with Subsections (b) and (c) of this section, and defer the beginning of the person's retirement pension." *Id*. § 6.14(a). Subsection (b), which contains language identical to subsection 6.14(b) of the Pension Plan, states in part "[t]he election to participate in the DROP shall be made in accordance with procedures set forth in any uniform and nondiscriminatory election form adopted by the board and in effect from time to time." *Id*. § 6.14(b). Further, subsection (c), which contains language identical to that of subsection 6.14(c) of the Pension Plan, provides in part,

> Each month after a member has made an election to participate in the DROP and indicated a desire to receive a retirement pension under [section 6.01 or 6.02 of this article], whichever is applicable, and until the member leaves active service, an

–22–

described above, the Texas Legislature's passage of Section 66 was intended to reverse the result of *Trammell*, which case involved only monthly pension installments. We cannot agree with appellants' position that the term "granted" in Section 66(e) refers to actions beyond the official authorization of pension annuities. We conclude the DROP Interest Amendments do not violate subsections (d) or (e) of Section 66.

Further, as to the DROP Withdrawal Provision, DPFP contends that "[a]s a practical matter, Plaintiffs' challenge to the policy change is tied to their interest-reduction argument, because no DROP interest accrues on monies withdrawn from DROP accounts." Appellants argue in their reply brief in this Court that their challenge to the accelerated withdrawal requirements is "independent" of their challenge to the reduction in the DROP interest rate. Specifically, according to appellants, (1) "[t]he Plan Amendment requiring retirees to begin withdrawing from their DROP account at age 70½ and requiring the entire amount withdrawn within 10 years impairs and reduces the DROP service retirement benefit by preventing the Officers from benefiting from the DROP interest rate after they reach the age of 80½," and (2) "[t]his argument is the same regardless of what the DROP interest rate is—whether it is the 8% guaranteed rate or some reduced rate."

We concluded above that the DROP interest rate is not among the "benefits" protected by Section 66. The record does not show that, other than being "prevent[ed] . . . from benefiting from the DROP interest rate," there is any reduction or impairment complained of by appellees respecting the DROP Withdrawal Provision. Based on our conclusion above, we conclude the DROP Withdrawal Provision does not reduce or impair a benefit protected by Section 66.

We decide against appellants on their first and second issues.

---

amount equal to the retirement pension the member would have received . . . for that month if the member had left active service and been_granted a retirement pension_ by the board on the effective date of DROP participation shall be transferred to a separate DROP account maintained within the fund for the benefit of the member.

*Id.* § 6.14(c) (emphasis added).

### III. ATTORNEY'S FEES

#### A. Standard of Review

"The grant or denial of attorney's fees in a declaratory judgment action is within the discretion of the trial court, and its decision will not be reversed on appeal absent a clear showing that it abused its discretion." *Ochoa v. Craig*, 262 S.W.3d 29, 33 (Tex. App.—Dallas 2008, pet. denied) (citing *Oake v. Collin Cty.*, 692 S.W.2d 454, 455 (Tex. 1985)).

#### B. Applicable Law

Section 37.009 of the Texas Civil Practice and Remedies Code states that in a declaratory judgment proceeding, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009.

#### C. Application of Law to Facts

In their fourth issue, appellants state, "In a bench trial, is a party limited to offering evidence of attorney's fees only during the actual trial on the merits or may a party offer evidence to support its request for attorney's fees while the trial court retains plenary power?" Specifically, appellants contend the trial court abused its discretion by not allowing them to offer evidence subsequent to trial to support their request for attorney's fees. Additionally, in their appellate argument pertaining to that issue, appellants contend "the trial court abused its discretion in refusing [appellants'] request for attorney's fees where [appellants] demonstrated that such an award would be 'equitable and just.'" According to appellants, (1) their "post-judgment motion for attorney's fees along with supporting evidence" was "timely" and (2) "[b]ecause DPFP's amendments to DROP are unconstitutional and because DPFP was quite aware of the expense involved in defending these amendments, and in light of DPFP's stated intent to take this matter all the way to the Texas Supreme Court, the trial court erred in denying the Officers equitable and just attorney's fees."

DPFP responds in part (1) "the trial court correctly ruled in DPFP's favor on the merits, providing a proper basis for the trial court's conclusion that Plaintiffs' fee request was not equitable or just," and (2) "[t]he reopening of the record to permit admission of Plaintiffs' fee evidence would have been a futile act in light of the trial court's conclusion that a fee award was improper because it was not 'equitable or just,' as required by the Remedies Code."

As described above, the trial court stated in its conclusions of law that "[a]n award of attorneys' fees to Plaintiffs under Section 37.009 of the Declaratory Judgment Act is improper here because (i) Plaintiffs did not present any evidence of their attorneys' fees at trial and/or (ii) a fee award under the circumstances of this case is not 'equitable and just.'" On this record, even assuming without deciding that appellants' post-judgment motion and evidence respecting attorney's fees was "timely," we conclude, because appellants did not prevail in the trial court, or in this Court for that matter, the trial court did not err by denying appellants' request for attorney's fees. *See Ochoa*, 262 S.W.3d at 33 (concluding trial court did not err by denying attorney's fees to nonprevailing party on declaratory judgment claim); *Brazoria Cty. v. Tex. Comm'n on Envtl. Quality*, 128 S.W.3d 728, 744 (Tex. App.—Austin 2004, no pet.) (trial court "is well within its discretion to deny or award attorney's fees based on the outcome of the case").

We decide appellants' fourth issue against them.

## IV. CONCLUSION

We decide against appellants on their first, second, and fourth issues. We need not reach appellants' third issue. The trial court's judgment is affirmed.

150839F.P05

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

–25–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LARRY EDDINGTON, VINCENT J.
AURENTZ, ROMAN KILGORE, AND
WILLIAM J. BUTLER, Appellants

No. 05-15-00839-CV       V.

DALLAS POLICE AND FIRE PENSION
SYSTEM AND GEORGE TOMASOVIC,
IN HIS OFFICIAL CAPACITY AS
BOARD CHAIR, Appellees

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-12001.
Opinion delivered by Justice Lang, Justices
Myers and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees DALLAS POLICE AND FIRE PENSION SYSTEM
AND GEORGE TOMASOVIC, IN HIS OFFICIAL CAPACITY AS BOARD CHAIR, recover
their costs of this appeal from appellants LARRY EDDINGTON, VINCENT J. AURENTZ,
AND WILLIAM J. BUTLER.

Judgment entered this 13th day of December, 2016.